BREAUX, C. J.
This suit was instituted by five of the children of David F. Williams 'against David F., Jr., and John D. Williams, also children of David F. Williams.
The purpose is to set aside and have declared null the last will of David F. Williams.
In his will, made in the nuncupative form by public act, he bequeathed to his wife, Briget Farley, all his property. After bequeathing all his property as above stated, he bequeathed to her the usufruct of the property, with the exception of his farm and a few head of cattle on the farm in Livingston Parish, which he bequeathed to his sons John D. Williams and David F. Williams, the defendants.
We insert for reference an excerpt from the will:
“I leave and bequeath to my wife, Briget Farley, all I may be possessed of at the time of my death, she to have the usufruct during her life time provided she does not get married again and behaves herself, with the- exception of my farm in the parish of Livingston, which I will with all the stock to my sons, John D. Williams and David F. Williams. After the death of my wife, it is my wish that my property shall be equally divided among my^ children, Mary Ann, Margaret, Mathilde, Alice, Elizabeth, John D. Williams and David F. Williams.
“Furthermore, it is my wish that my children keep the property together as long as they can after the death of my wife and pay the taxes and insurance.”
David F. Williams, Sr., died in the year 18S7. The same year, on the'.petition of David F. Williams, Jr., and John D. Williams, the will of their father, Williams, Sr., was probated in proceedings to which it does not appear that plaintiffs were parties. These heirs were recognized and the decree placed them in possession in December, 1907.
The will is dated October 25, 1887.
The grounds for annulling the will are, in the first place, that it is vague and contradictory and not reconcilable; that, the will being null, each heir is entitled to a fractional interest corresponding with the number of children, to wit, one-seventh, subject to the mother’s usufruct; that no extra portion was bequeathed to the two sons David F. Williams, Jr., and John D. Williams. These plaintiffs claimed the benefit of the laws relating to the légitime or forced heirship. They allege that at most the legatees, Williams, Jr., and John D. Williams, were not entitled to anything in excess of the usufruct; that, none the less, they went into possession of property and claim as owners, under the will attacked, lands in area over 500 acres, although under the terms of the will they at most have only the usufruct of the farm, measuring about 50 acres, and of the stock on the place.
It appears of record that John D. Williams and David F. Williams, Jr., sold the woodland to the Pennawich Lumber Company for $8,000, and that the vendee was removing the timber from the land at the time that this suit was instituted.
[1] The plea of prescription is before us for consideration and decision. If prescription began to run on the date of the death of the testator, plaintiffs’ alleged claim is prescribed, but, if it begins, as contended by plaintiffs, from the date that the will was probated, it is not prescribed.
Article 3542 fixes the prescription of an action of reduction of excessive donation, or to rescind a testament, at five years. The issues here fall'within the terms of the article of the Civil Code in regard to prescription. The construction placed upon these articles by the decisions sustains the view just expressed.
The contention on the part of the defendant is that the decision in the Succession of Ball, 43 La. Ann. 344, 9 South. 45, sustains his ground of defense based up'on prescription. In that case plaintiff sued for the reduction of a legacy to the disposable quantity. There are expressions in the decision which seem to confine the issues to a legacy as due. The statement of the facts of the case *870 is slightly incongruous and does not entirely agree. But, be that as it may, the court did not maintain the plea of prescription as applying to a demand to compel the filing of an account, the payment of a legacy, or for the reduction of a legitime. It was stated in that decision that article 1504 does not fix any absolute date for the institution .of suits in reduction of legacies: that this article only provided that on the death of the donor the reduction of a donation can be sued for. The court held that the prescription of ten years had no application.
We have carefully read this opinion and have not found that it affords the least comfort to defendant, as it does not hold that prescription runs from the death of the testator.
In the Moore Succession, 42 La. Ann. 336, 7 South. 561, there is an unconnected expression regarding the date from which prescription begins to run. There was no necessity to express that view in order to arrive at a conclusion. It follows that the decision is barren of importance and not pertinent. These are the decisions' confidently cited by the defendant.
On the other hand, there is reliable authority for holding that prescription begins to run from the date of probation of the testament. We do not think it is difficult to arrive at that conclusion, for it certainly appears reasonable that a judgment forms a sufficient basis for an action of nullity, and hence that prescription runs from its date. That was substantially the view expressed in Calais v. Semere, 10 La. Ann. 684.
[2]The judgment annulling the will and placing the heirs in possession is not an absolute nullity. There is no good reason for holding in regard to it as if it were entirely null and void and compute the time the prescription runs from the day of the death of decujus. Our view finds support in Succession of Justus, 45 La. Ann. 190, 12 South. 130. In another case the court recognized the validity of a judgment probating a will sufficient for it to serve for the basis upon which to compute the running of prescription. The validity of the judgment was sufficient to give rise in time to a right of property. Thomas v. Blair, 111 La. 679, 35 South. 811.
The plea, therefore, is overruled.
[3] Passing from prescription, it becomes necessary to determine the extent of the meaning of the word “farm.” It will be noticed that the will mentions “a farm.” The contention of defendants is that it includes the connected area in the parish of Livingston, while plaintiffs seek to have it restricted to the area under fence and as subject to usufruct. Learned counsel for plaintiffs urged that it should be limited strictly to the limited number of acres cultivated and under fence, and that it should not be extended so as to include lands further than the fence. The contention of the defendant, on the other hand, is that it includes the entire tract and not only the portion under fence.
Generally the word “farm” includes all.the land which forms part of the tract. The farm may be' made of several connected parcels under one control, and the testator who devises his farm devises not a part of the farm but the whole farm. In re Drake (D. C.) 114 Fed. 229, 231; G. W. D. Goodtitle v. Paul, 2 Burroughs, 1089-1094.
[4] We next come to the ownership of this farm situated in the parish of Livingston. Regarding half of it and of the stock, the' question is easily solved. The farm belonged to the community existing between Mrs, Williams and her late husband. One half of it passed to her as survivor in community, and the other half to her children. True, he bequeathed to his wife “all his property,” and in the same sentence he bequeathed the usufruct to her. As to half, he sought to give that which did not belong to. him. In the second place, he bequeathed the usufruct to *872 her, something that, as a matter of course, could not be done. These legacies cannot be recognized, being contradictory and one destructive of the other. She may enjoy the usufruct, a right she possesses over the community as the surviving partner in community; that is the'usufruct other than the farm.
[5,6] We have already noted that the testator made a special bequest to his sons. The pronoun “which” employed in the will applies to either the usufruct or the ownership of the property. In either case, it is evident from the reference made in the will to a farm that it was his intention to give it to his sons. Although the property did not pass to the wife nor the usufruct, yet the direct reference to the farm that he intended to donate renders' it plain that his intention was to give it to them.
If he intended to give the usufruct to his wife (as we hold), we meet with difficulty in determining what property he intended to bequeath to his sons. As he gave the usufruct to his wife of all the property other than the farm, the usufruct of the farm should go to the sons under the expressions of the will taken as a whole. The words “with the exception of” them refer to the usufruct and not to the ownership of the property. That is, he gave the usufruct of the farm to his sons; and the usufruct of the other property to his wife. This inference is sustained by the fact that in following provisions of the will he gave, not the residue of his property to be equally divided among his children, but his whole property. It includes the farm as well as the other property which at his death was his property unless his intention was to bequeath the farm to his sons. That we do not find clearly expressed. The last written clause to which we gave effect carries with it the least quantity.
In Obscuris Quod Minimum Est Sequimur, the text reads:
“When a person has ordered two things which are contradictory, that which is last written is presumed to be the will of the testator, in which he has persevered and a derogation to what has before been written to the contrary.” Oivil Code, 1723.
Very few words well written would have sufficed to bequeath the interest of the decujus in the farm. Succession of Bobb, 41 La. Ann. 247, 5 South. 757.
[7] In case of, doubt the interpretation is preferred which is nearer the order of distribution. The principle is that the law favors distribution when the testator clearly expresses his will. Succession of Stewart, 51 La. Ann. 1561, 26 South. 460; Burthe v. Denis, 31 La. Ann. 568.
The sons have the right to the usufruct to half of the farm. Miller v. Hirsch, 110 La. 264, 34 South. 435.
[8] Now, as relates to the portion given: Whether it was given as an extra portion is the question for decision. There is no term in the will regarding an extra portion nor any expression which is the equivalent of that term. Collation not forbidden is presumed.
It will have to be collated, and the amount, if any was given in excess of the légitime, reduced. Civil Code, 1227, 1228 et al.
[9] One of the contentions of defendants, David F. Williams and John D. Williams, is that, if the property donated causa mortis must be returned to the mass, the value of the legacy to be accounted for must be determined at the time of the testator’s death.
The contention of plaintiff is that it should be calculated at the time of the inventory as decided by the district court.
We cannot agree with that view. We are of the opinion that the value is .properly determined at the opening of the succession. Oivil Code, 1270.
It is ordered, adjudged, and decreed that the judgment be amended by substituting the 'word “usufruct” as the portion of John D. *874 and David F. Williams, Jr., so as that part of the judgment will read, there is judgment herein recognizing David F. Williams and John D. Williams, or their heirs and representatives, as owners in indivisión of one-half of the usufruct in the said above-described estate under the will and testament of David F. Williams; and it is further ordered, adjudged, and decreed that David F. Williams and John D. Williams, their heirs and representatives, return and collate with the succession of David F. Williams, deceased, the one-half usufruct in the real estate above described and that said one-half be reduced to the portion allowed by law to the testator to dispose of beyond the légitime, and the remainder to be duly partitioned.
The judgment, as amended, is affirmed; costs of appeal to be paid by John D. and David F. Williams, Jr.