29 So.2d 583

Succession of MONTEGUT.

MONTEGUT et al. v. ST. MARTIN et al.

No. 38205.

Feb. 10, 1947.

Melvin P. Barre and Rene R. Nicaud, both of New Orleans, for appellants.

Robert E. Baird, of New Orleans, for appellees.

HAMITER, Justice.

The determination of this litigation requires an interpretation of a provision in the last will and testament of Amelie Montegut.

The testatrix, a single person, died on January 20, 1934, at her domicile in the Parish of St. John the Baptist, leaving no forced heirs. Her closest surviving relatives were a brother, Lucien Montegut, and some thirty nieces and nephews, the children of predeceased brothers and sisters. Some of these relatives, but not all of them, were named particular legatees in her will which was olographic in form and written in the French language on September 4, 1933.

Whether or not Charles St. Martin and A. L. (Pat) Montegut, two nephews, were

designated therein as universal legatees, entitled as such to the residue of her estate, is the disputed question here.

On February 3, 1934, the will was probated, and on February 8, 1934, the said Charles St. Martin and A. L. (Pat) Montegut were confirmed, and they qualified, as testamentary executors of decedent's succession.

Some ten years later, specifically on May 16, 1944, the said St. Martin and Montegut petitioned the court to place them, as universal legatees, in possession of the residue of decedent's estate in the proportion of an undivided one-half to each. Among other things they alleged in their petition:

"That the said decedent left a Last Will and Testament made in the olographic form, which testament was duly probated and ordered executed; that your petitioners were appointed executors of the said will and that they have paid all debts of the said estate and have delivered all legacies contained in said will, all as will appear from the proceedings heretofore taken and the vouchers filed herein.

"That your petitioners were in said will designated universal legatees of the decedent, Amelie Montegut; that there is no longer any necessity for any further administration of this estate and that they desire to accept the residue of said estate purely, simply and unconditionally and to be placed in possession thereof and to be discharged from their trusts as Executors of said Will."

They further alleged that the residue of the estate consisted of two tracts of land situated in the Parish of St. John the Baptist and cash in the amount of $114.07. One of the tracts was valued at $5,000 and the other at $25, according to an inventory and an appraisement filed in the succession proceedings.

In an ex parte judgment, dated May 16, 1944, the court recognized those petitioners as the universal legatees of decedent, and it ordered that they be placed in possession of the residue of her estate.

On April 26, 1945, the instant action, attacking directly the ex parte judgment of May 16, 1944, was instituted by eleven of decedent's' nieces and nephews who were not named in her will. Plaintiffs, in their petition, allege that such judgment "was obtained by a patent misrepresentation of fact"; that the will discloses no intention of the testatrix to name Charles St. Martin and A. L. (Pat) Montegut as universal legatees; and that by her testament the decedent did not dispose of her entire estate, but only about one-half thereof. Further, they allege that the said St. Martin and Montegut have made a simulated sale of one of the tracts of land to Giacomo Cali and that the latter has granted thereon an oil and gas lease to R. A. Metz.

Plaintiffs pray that the judgment of possession dated May 16, 1944, be decreed a nullity; that there be reserved to them the right, in due course and after proper pro-

ceedings, of being recognized as heirs at law of the decedent; and that they, along with the other heirs at law, be sent into possession of the residue of the estate. Those made defendants, besides the said St. Martin and Montegut, are Giacomo Cali, R. A. Metz, and all of decedent's heirs at law who did not join as plaintiffs.

On behalf of some of the defendants there were filed exceptions of no right and no cause of action and pleas of prescription and of estoppel. All of these were overruled.

The principal defendants thereafter answered denying that the assailed judgment of possession was obtained by misrepresentation of fact and further denying that the will of decedent did not dispose of her entire estate.

The trial judge, following a trial of the case and a consideration of it on a rehearing, ultimately concluded that no fraud had been committed in the obtaining of the possession judgment of May 16, 1944. He also concluded, however, that the will of the decedent did not designate Charles St. Martin and A. L. (Pat) Montegut as her universal legatees and, accordingly, he set aside the judgment that recognized them as such. From this decree those defendants are appealing.

Under the exceptions of no right and no cause of action and the plea of prescription, which are urged here but not seriously, appellants contend that appellees'

rights prescribed in five years from the date of the probating of decedent's will (February 8, 1934). This contention is without merit. If it be assumed that the five year prescription is applicable to an action of this nature (this we do not determine) it could not have begun to run against appellees until May 16, 1944, the date appellants were placed in possession as universal legatees. In this suit, filed April 26, 1945, appellees are not seeking to have the will declared a nullity or to have the bequests therein reduced; they are attacking only the judgment of possession. Until that judgment was signed they had no cause of action. The judge might very well have refused to sign it and, otherwise, have ordered appellees and the other heirs at law placed in possession of the residue of decedent's estate.

The plea of estoppel, in behalf of which no argument is made, is equally untenable. No acts of appellees sufficient to effect an estoppel are disclosed by the record.

Coming now to the merits of the case it does not appear that fraud was perpetrated by appellants in obtaining the ex parte judgment sending them into possession as universal legatees. This was the conclusion of the trial judge on rehearing, and the evidence seems to sustain it. Moreover, no complaint of that conclusion is made here by appellees' counsel.

The will as written in the French language by decedent is as follows:

"Septembre 4   1933

"Voicie mon Testament Je laisse mille piastres pour des meses et mes frais d'enterrement 15 cents piastres pour Amelie et Lise St Martin mille piastres pour Emma Montegut.   mille pour Lucien et son fils Pat Montegut 5 cents pour Stephanie et Marie Montegut, 5 cents pour Celestine St Martin.   5 cents pour Charles St Martin 5 cents pour Stephen Montegut, *5 cents pour regler ma succession que je laisse a Charles St Martin et a Pat Montegut, comme l'ecuteur de mon Testament*   Tousce que je laisse chez Amelie et Lise St Martin sont a elles.

"Amelie Montegut"

In a direct word for word English translation it reads:

"September 4   1933

"Here is my Testament I leave one thousand dollars for masses and my expenses of burial 15 hundred dollars for Amelie and Lise St Martin   one thousand dollars for Emma Montegut.   one thousand for Lucien and his son Pat Montegut   5 hundred for Stephanie and Marie Montegut, 5 hundred for Celestine St Martin.   5 hundred for Charles St Martin 5 hundred for Stephen Montegut, *5 hundred for settling my estate which I leave to Charles St Martin and to Pat Montegut, as the executor of my Testament*   All that I leave at the home of Amelie and Lise St Martin is for them.

"Amelie Montegut"

(Italics ours.)

The emphasized language is the portion of the will which gives rise to this litigation.   All parties litigant deny that the provision is ambiguous, they declaring that the testatrix' intention thereby is plainly and clearly shown; yet each side gives it a different meaning.

Appellants maintain that the testatrix, by the provision, constituted them her universal or residuary legatees, she having made reference to the "estate" when she wrote "which I leave to Charles St. Martin and Pat Montegut."

Appellees, on the other hand, contend that the last-quoted language referred to the preceding "5 hundred" ($500); that the testatrix, in this portion of her will, intended merely to leave that amount to appellants for their services as executors in settling her estate.

Testifying at the trial were eight experts on French translation and interpretation, all eminently qualified witnesses whose motives could not be questioned.   Some were members of the faculties of Tulane and Louisiana State Universities and of Newcomb College; the others were prominent members of the New Orleans Bar. In so far as the record discloses, none had any pecuniary or other interest in the outcome of the case.   All declared that there is no ambiguity in the provision in question; however, four insisted that appellants' position is correct, and the other four, equally as insistent, opined that the

only interpretation to be given the phraseology is that contended for by appellees.

The conclusions reached by the respective experts were predicated principally on their knowledge gained from studies of the leading authorities on French language. Those testifying for appellants reasoned that the relative pronoun "que", used by the testatrix and meaning "which", should not, according to the general rule of construction as enunciated by the authorities, be separated from its antecedent. They pointed out that the word immediately preceding "que" is "succession" (meaning estate), hence, it is the antecedent of "que". Further, according to the rule, "que" is used as the object of the verb that follows it, which in the provision is "laisse" (meaning leave). Since "que", they concluded, is the object of "laisse" and "que" stands for the word "succession', the testatrix obviously meant: "I leave my estate to Charles St. Martin and Pat Montegut."

The experts for appellees, on the other hand, showed that there are many instances, sanctioned by the French grammarians, where the word "que" may be separated from its antecedent in the interest of good taste and better and clearer expression, and they insisted that the present case falls within the exception to the rule of ordinary usage. Accordingly, they maintained that the antecedent of the relative pronoun "que" is "5 cents" (Five Hundred Dollars), and that the testatrix intended: "Five Hundred Dollars which I leave to Charles

St. Martin and Pat Montegut to settle my succession as executors of my testament."

■ Of course, an interpretation of decedent's will according to the strict rules of the French language and linguistics is hardly appropriate here, for clearly the testatrix, in attempting to express her intention, was either unfamiliar or unconcerned with the formal niceties of grammar. That this is true is adequately demonstrated by the careless manner in which the will was written, particularly by the testatrix' utter disregard for the elementary rules of punctuation and of proper sentence structure. Hence, the disagreement of the witnesses while testifying as experts on the French language is of no great moment with respect to a proper and correct determination of this dispute. It is important to notice though that those witnesses, in reaching their respective conclusions and in disagreeing among themselves, also took into consideration the French language as ordinarily used by the French speaking citizens of Louisiana, including the testatrix.

■ With the fact of this disagreement in mind, and since the disputed provision does not, standing alone, reveal to us the clear intent of the testatrix in writing it, we must take into consideration, in attempting to solve our problem, other clauses and the whole language of the will. This is in keeping with a rule of interpretation that is well established in our jurisprudence.

We notice, in this connection, that following the disputed provision of the will there exists a special bequest in these words: "All that I leave in the home of Amelie and Lise St. Martin is for them." For a special bequest to follow a residuary disposition (if that be the testatrix' intention here) seems somewhat unusual. But we know of nothing to prevent it; in fact very often codicils to wills provide similar situations. If a special bequest can be written in a codicil after a residuary legacy has been made in the will there appears to us no good reason why it can not be so written in the same instrument.

Also to be considered, to which attention was directed by two of appellants' experts, is the fact that the testatrix commenced the first particular legacy with the words "Je laisse" (I leave), but she omitted those words at the commencement of the legacies that followed. In view of this, appellants' counsel argue that to give meaning to each of the succeeding legacies which commenced with an amount, the words "I leave" must be implied; and if implied in the disputed provision it reads: "I leave $500 to settle my succession which I leave to Charles St. Martin and Pat Montegut, as executors of my will." Thus, they insist, those persons were bequeathed the $500 (as executors' fees) and also the residue of the estate. Clearly the words "I leave" are implied with reference to some of the legacies. But it seems highly improbable that the testatrix intended to use

them at two different places in the sentence under consideration; hence, the argument of appellants' counsel, although interesting, cannot be given effect here.

When the whole language of the will is considered, as required by the above-mentioned rule, we find that there are no portions (other than the two discussed, and they furnish no assistance) which can possibly aid us in ascertaining the intention of the testatrix in her writing the controverted clause. Consequently, other means must be resorted to in determining the litigation.

This court in Succession of Williams, 132 La. 865, 61 So. 852, a case cited by appellees' counsel, held (quoting from the syllabus): "Whenever the terms and dispositions are ambiguous and doubtful, the law favors that interpretation which will cause the property to be distributed more nearly in accordance with the law. The law favors an equal distribution, and, unless the testator clearly expressed an intention to dispose of his property otherwise, the law holds that he intended that his children should share it equally."

And Revised Civil Code Article 1717, relied on by the same counsel, provides: "If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least."

Whether these two principles be appropriate here or not, we hesitate to and do not attempt to apply them; they clash

head-on with the well-established concept referred to in Succession of Fertel, 208 La. 614, 23 So.2d 234, 238, that: "When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption that he intends to die intestate as to any part of his estate when the language he uses will clearly carry the whole."

■ Remaining available for interpreting the will of decedent is the rule announced in the Revised Civil Code which permits the employing of extrinsic evidence to discover the intent of a testator when, and only when, a testamentary disposition is ambiguous or indefinite. Unquestionably, the disposition under consideration is ambiguous, thus rendering applicable the rule; the irreconcilable disagreement among the distinguished French scholars who were disinterested witnesses in the case attests to the ambiguity. Announcing such rule are the following:

"In case of ambiguity or obscurity in the description of the legatee, as, for instance, when a legacy is bequeathed to one of two individuals bearing the same name, the inquiry shall be which of the two was upon terms of the most intimate intercourse or connection with the testator, and to him shall the legacy be decreed." R.C. C. Art. 1714.

"When, from the terms made use of by the testator, his intention can not be as-

certained, recourse must be had to all circumstances which may aid in the discovery of his intention." R.C.C. Art. 1715.

"A mistake in the name of an object bequeathed is of no moment, if it can be ascertained what the thing was which the testator intended to bequeath." R.C.C. Art. 1716.

In construing these articles this court said in Burthe v. Denis, 31 La.Ann. 568, that: "This right of resorting to extrinsic evidence, is not limited to cases of 'ambiguity or obscurity in the description of the legatee', for that is provided for in R.C.C. 1714; nor to the ascertainment of 'what the thing was, which the testator intended to bequeath,' for that is provided for by art. 1716 R.C.C. We see no reason to doubt that the rule of art. 1715 would extend to the case where there was ambiguity or obscurity, as to the quantum or portion of a legatee, as well as to the case where there is doubt as to sense· in which words are used by the testator. The article is general and absolute, and makes no distinction between latent and patent ambiguities; but authorizes the court to resort 'to all circumstances' which may throw light upon the matter, 'when from the terms used by the testator his intention can not be ascertained.' "

Following that comment, and after discussing other authorities, the court found the will involved to be ambiguous, and it then determined the intention of the tes-

tator from extrinsic testimony that had been received by the trial judge.

Other cases in our jurisprudence sanctioning the principle permitting the introduction and consideration of extrinsic evidence in explanation of ambiguous provisions of wills are the following: Succession of Stewart, 51 La.Ann. 1553, 26 So. 460; Miller v. Hirsch, 110 La. 259, 34 So. 435; Hessmer v. Edenborn, 196 La. 575, 199 So. 647, and Succession of Levy, 207 La. 1062, 22 So.2d 650.

█ During the trial of the instant case evidence was offered for the purpose of showing the testatrix' relationship with appellants and, thereby, disclose her intentions with reference to the clause in question. The judge admitted some of the evidence (an amount insufficient for determining the dispute), but he excluded the greater part thereof. It is our opinion, in view of the ambiguity in the will, that the evidence should have been received and thereafter considered. For this reason the case will be remanded for the restricted purpose of permitting the parties litigant (both appellees and appellants) to introduce evidence in proof of any and all circumstances which may aid in the discovery of the intention of the testatrix with reference to the controverted provision, the evidence, of course, to be otherwise admissible and material. After it is introduced, the trial judge will render judgment, in accordance with law, based on both the new evidence and that heretofore received.

For the reasons assigned the judgment appealed from is reversed and set aside and the case is remanded to the district court to be proceeded with according to law and consistent with the views herein expressed. Appellees shall pay the costs of this appeal, and all other costs shall await the final determination of the litigation.