36 So.2d 639

Succession of SMART.

No. 38358.

June 1, 1948.

J. S. Pickett, of Many, for opponents and appellants.

S. N. Young, of Shreveport, for legatees and appellees.

PONDER, Justice.

The plaintiffs opposed the probate of the last will and testament of Ada A. Smart. The opposition is based on the grounds that the will is not entirely written, dated and signed by the testatrix; that it contains prohibited provisions which destroy it as an instrument expressing the testatrix's will; and that the will as a whole is so ambiguous that the intent of the testatrix cannot be determined. Upon trial of the opposition the lower court gave judgment decreeing two of the particular legacies contained in the will to be void as substitutions and decreed the will to be valid in all other respects. The plaintiffs have appealed.

The will is olographic in form and reads as follows:

"April 5, 1943"
"This is my will of my personal belongings.

My solitair diamond to Mrs. P. W. Bogan. My silverware & china dishes to Mrs. P. W. Bogan.

My dinner ring to Lucile Bonham, at her death to go to Ann Lee.

My pin to (sunburst diamond)

My house where Inez lives to her, until her death at her death to Helen Wingate Allen.

My house where Louise Bunch to Mary Ada.

The house where Mr. Neely lives to Ella Mae Self.

The house south of me to Margary White.

The house I live in to Emile & Mattie jointly.

The place at their death to be sold and divided between nieces.

The 42 acres of up-land to Dolph Lea.

My violin to Kile Smart.

My watch to Ella May Self.

My bank stock—$100.00 to Beck—fence her place in so she can have a garden.

The rest of it goes to—100 to the Bapt church divide the money between nieces.
(Signed)   Ada A. Smart"

The two provisions in the will decreed to be substitutions are as follows:

"My dinner ring to Lucile Bonham, at her death to Ann Lea."

"My house where Inez lives, until her death at her death to Helen Wingate Allen."

There seems to be no complaint urged as to the trial judge's finding with respect to these two particular legacies and the defendant has not answered the appeal urging any complaint thereto.

The appellants take the position that a penciled line drawn between two bequests was not proven to be in the handwriting of the deceased and that the will is not thereby entirely written, dated and signed by the testatrix as required by Article 1588, Revised Civil Code.

An examination of the will shows that there is a line drawn by pencil connecting two bequests. The two bequests appear in the will in the following order:

"My pin to (sunburst diamond)"

"My house where Inez lives to her until her death at her death to Helen Wingate Allen."

The penciled line begins at the word "to" in the uppermost bequest and runs downward at an angle to the word "Inez" in the lower bequest. The lower court was evidently of the opinion that this penciled line indicated an intention on the part of the testatrix to give the pin to Inez. The testimony of four witnesses is to the effect that the will is entirely written, dated and signed by the testatrix, but they would not state that the penciled line was in the handwriting of the testatrix.

■ If the penciled line was written by another and not the testatrix, it must be considered as not written. Article 1589, Revised Civil Code. If it was written by the testatrix, it connects a bequest to one that contains a prohibited substitution and we could not say with any degree of certainty that the testatrix intended to give the pin to Inez independently or to give it to her with the provision that at her death it should go to Helen Wingate Allen. Consequently, we are bound to conclude that the bequest of "My pin to (sunburst diamond)" is of no effect.

■ The fact that there are bequests of particular legacies in the will that contain prohibited provisions or substitutions such would destroy only those legacies and would not effect the will as a whole. It is well settled that the invalidity of a portion of a will does not destroy the will in its entirety. Succession of Lissa, 195 La. 438, 196 So. 924, and the authorities cited therein to that effect.

■ We see no merit in the appellants' contention that the will as a whole is so ambiguous that the intent of the testatrix cannot be determined. Where there is ambiguity in the description of the legatee, or the thing which the testatrix intended to bequeath, or the quantum or portion of the legatee, or where there is doubt as to the sense in which the words are used by the testatrix, resort may be had to extrinsic evidence. In fact, all circumstances throwing any light on the testatrix's intention must be considered. Revised Civil Code, Articles 1714, 1715 and 1716. Succession of Montegut, 211 La. 112, 29 So.2d 583.

■■ The will is written in the testatrix's handwriting in pen and ink, except the penciled line above referred to and the portion at the end of the will reading. "100 to Bapt Church divide the money between nieces", which is written in pencil. The four witnesses testified that the entire will was written, dated and signed by the testatrix. The only doubt that they expressed was as to the penciled line heretofore referred to. An olographic will does not have to be written in its entirety on the same date and in the same ink. Succession of Cunningham, 142 La. 701, 77 So. 506; Succession of Guiraud, 164 La. 620, 114 So.

489; Jones v. Kyle, 168 La. 728, 123 So. 306; Picard v. Succession of Picard, 179 La. 746, 155 So. 11; and Succession of Tallieu, 180 La. 257, 259, 156 So. 345. Under the same reasoning, it would be equally true where a portion of the will was written with a pencil. All that is required by Article 1588, Revised Civil Code, is that the olographic will must be entirely written, dated and signed by the hand of the testatrix. It is subject to no other form.

The bequest, "The house I live in to Emile and Mattie jointly. The place to be sold at their death and divided between nieces," is null under the provisions of Article 1520, Revised Civil Code, which prohibits substitutions and fidei commissa. Succession of Hunter, 159 La. 492, 105 So. 596.

In the Hunter case a certain house was bequeathed to a legatee for her use and benefit during her natural life, which was directed to be sold at her death and the proceeds derived therefrom to be paid over to a charitable organization. The Court, after reviewing many of the leading decisions and discussing Article 1520 and Article 1522, Revised Civil Code, which permits testamentary disposition of the usufruct of property to one and the naked ownership to another, arrived at the conclusion that the bequest was null because it created a common-law life estate in the legatee and that it could not be regarded as a donation of the usufruct of the property. It is apparent that the bequest in the present case purports to donate a life estate in the legatees, which is prohibited under the provisions of Article 1520 of the Code, as pointed out in the Hunter case.

For the reasons assigned, the judgment of the lower court is amended so as to decree the provisions in the will, "My pin to (sunburst diamond)," meaningless and without effect and the bequest, "The house I live in to Emile and Mattie jointly. The place at their death to be sold and divided between nieces," to be null and void. As thus amended, the judgment of the lower court is affirmed at appellee's cost.

O'NIELL, C. J., is of the opinion that there is no disposing clause with regard to the pin of the testatrix described as her sun-burst diamond, and is of the opinion also that the following dispositions are prohibited substitutions: (1st) "My house where Inez lives to her, until her death at her death to Helen Wingate Allen." (2nd) "The house I live in to Emile & Mattie jointly. The place at their death to be sold and divided between nieces."