[39] On Rehearing
[41] As pointed out by this Court when this case was originally before us, Succession of Montegut, 211 La. 112, 29 So.2d 583,585, this litigation requires the interpretation of the italicized portion of the last will and testament of Amelie Montegut, executed in olographic form and written in the French language, of which the following is a literal translation.
[42] "Here is my Testament I leave one thousand dollars for masses and my expenses of burial 15 hundred dollars for Amelie and Lise St Martin one thousand dollars for Emma Montegut. One thousand for Lucien and his son Pat Montegut 5 hundred for Stephanie and Marie Montegut, 5 hundred for Celestine St Martin. 5 hundred for Charles St Martin 5 hundred for Stephen Montegut,5 hundred for settling my estate which I leave to Charles StMartin and to Pat Montegut, as the executor of my Testament
All that I leave at the home of Amelie and Lise St Martin is for them." (Italics ours)
[43] In giving consideration to the problem posed, this court concluded that the clause was ambiguous, remanded the case "for the restricted purpose of permitting the parties litigant (both appellees and appellants) to introduce evidence in proof of any and all circumstances which may aid in the discovery of the intention of the testatrix with reference to the controverted provision, the evidence, of course, to be otherwise admissible and material," and directed the trial judge to render judgment in accordance with law based on both the new evidence and that theretofore received.
[44] Following these instructions, additional evidence was introduced in the lower court by both parties. The substance of the evidence offered on the part of the defendants St. Martin and Montegut showed that they were bound by closer ties of association, love and affection with the decedent than were the plaintiffs. On behalf of the plaintiffs there was offered the testimony of plaintiff J. Oswald Montegut, who testified that upon an occasion when he was driving his aunt (the decedent) home after a visit with his mother in the late summer of 1933, she requested him to stop by the home of Judge John B. Chenet; and that upon arrival there she sought the Judge's advice, with a view to making a will; that the Judge advised her, in the presence of Oswald Montegut, that all she had to do was to date the document, write it in her own hand, listing the names of those to whom she wished to leave special bequests with the amounts opposite their names, and if she appointed an executor he would dispose of the remainder of her property according to law, then to sign it.
[45] The trial judge, after giving consideration to the evidence and following what he termed the established rule of law"that the reasonable and natural presumption is that thetestatrix intends to dispose of her entire estate and that shedoes not intend to die partly testate and partly intestate,"
concluded that it was the intention of the testatrix to designate St. Martin and Montegut as her universal legatees and rendered judgment accordingly. (Italics ours.)
[46] On an appeal taken from this judgment by the plaintiffs, this Court, after carefully analyzing the cases relied on by the district court to sustain what it termed the established rule of law above referred to, and showing that they were distinguishable from a factual standpoint and therefore not controlling, applied the rules for interpretation of wills enunciated by this Court in the case of Burthe v. Denis, 31 La.App. 568, i.e., that the intention of the testator should govern, such intention to be deduced primarily from the will itself, if possible; if not, by recourse to all circumstances which may aid in the discovery of such intention; and that in case of doubt, an interpretation should be preferred which will approximate most closely the legal order of distribution; and we then held that as the disposition of the residue of the estate of the testatrix was not clearly expressed in the will, it should be considered as not made. Accordingly, the judgment of the lower court was reversed and judgment was rendered in favor of plaintiffs, sending the legal heirs into possession of the estate of the decedent.
[47] We granted a rehearing on the application of the defendants, in which they urged that we had given no consideration to any of the extrinsic evidence for which the case had been specifically remanded, and further that we had ignored the law of the case as established by the judgment of this court in its first opinion.
[48] In deciding this case when it was originally before us, the author of the opinion, after first exhausting the possibility of arriving at the intention of the testatrix by giving consideration to other clauses in the will and to the language as a whole, pointing out that the holding in Succession of Williams,132 La. 865, 61 So. 852, relied on by the plaintiffs, to the effect that when terms and dispositions are ambiguous, the law favors that interpretation which causes an equal distribution, in the absence of a clearly expressed intention to dispose of the property otherwise, and Article 1717 of the Revised Civil Code, providing "If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least," "clash head-on with the well-established concept referred to in Succession of Fertel, 208 La. 614, 23 So.2d 234," [211 La. 112,29 So.2d 587] concluded that the only avenue left open for ascertaining the real intention of the testatrix was to resort to extrinsic evidence as authorized under Articles 1714 and 1716, Revised Civil Code, as construed by this Court in Burthe v. Denis, supra.
[49] Applying this rule of law, after having carefully examined the contents of the will as a whole together with all the evidence in the record, we are unable to conclude within any degree of reasonable certainty that it was the intention of the testatrix by the controversial clause in her will to make Charles St. Martin and A. L. (Pat) Montegut her universal legatees. The additional evidence offered by the defendants after the case was remanded throws no light on the intention of the testatrix in this matter, it only shows the close ties which existed between the testatrix and her two nephews, which she herself showed by leaving to each a legacy and making them the executors of her will, with recompense; nor does the testimony offered by J. Oswald Montegut, the plaintiff, help us, since it shows only that the testatrix received advice as to the procedure and form to be followed in making her will and cannot be said to disclose her intention. Further, the holding in the Fertel case, upon which the trial judge based his judgment, has no application here since it is predicated on the proposition that the language used in a will "clearly carries the whole," while in the instant case the import of the language used not only fails to clearly dispose of the whole, but even after having considered all of the extrinsic evidence such an intention cannot be reasonably eked out. Consequently we are left with the question very much in the same condition as when it was here on first appeal, and after a careful study and analysis of the will in its entirety, giving full consideration to all the evidence, we do not believe that it has been shown with a reasonable degree of certainty that it was the intention of the testatrix to make Charles St. Martin and A. L. (Pat) Montegut her universal legatees.
[50] For the reasons assigned, our former decree rendered on December 9, 1949, is reinstated and made the final judgment of this Court.
[51] Accordingly, the judgment of the lower court is annulled and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiffs and against Charles St. Martin, Jr. and A. L. (Pat) Montegut, setting aside the ex parte judgment of the lower court dated May 16, 1944, placing them in possession of the estate of the decedent Amelie Montegut as her universal legatees; it is further ordered, adjudged and decreed that the legal heirs of the deceased be placed in possession of the residue of her estate in the proportion and distribution as the law directs in the case of intestacy; the defendants Charles St. Martin, Jr., and A. L. (Pat) Montegut to pay all costs.
[52] HAMITER, J., dissents, adhering to the written reasons heretofore assigned by him.