[27] The law governing this case is announced and definitely settled in the opinion, of which I was the author, rendered on the previous hearing. 211 La. 112, 29 So.2d 583, 585.
[28] In that opinion we demonstrated conclusively that from the whole language of the will the intention of the testatrix could not be determined with respect to the following disputed provision: "* * * 5 cents pour regler ma succession que je laisse a Charles St Martin et a Pat Montegut, comme lecuteur de mon Testament * * *."
[29] And we held that by reason of the ambiguity attending such provision, and pursuant to certain cited articles of our Civil Code and decisions in the jurisprudence of this state, extrinsic evidence should be resorted to in deciding the litigation. To accomplish this end we concluded: "* * * For this reason the case will be remanded for the restricted purpose of permitting the parties litigant (both appellees and appellants) to introduce evidence in proof of any and all circumstances which may aid in the discovery of the intention of the testatrix with reference to the controverted provision, the evidence, of course, to be otherwise admissible and material. After it is introduced, the trial judge will render judgment, in accordance with law, based on both the new evidence and that heretofore received."
[30] In keeping with our mandate the district judge, on the remand, received further extrinsic evidence and considered it along with that theretofore introduced. Then, following his consideration, he concluded that it was the intention of the testatrix to leave the disputed residue of her estate to Charles St. Martin, Jr., and A. L. (Pat) Montegut, and he recognized and decreed those persons to be the universal legatees of the decedent. His judgment, in part, reads: "It is therefore ordered, adjudged and decreed that there be judgment in favor of Charles St. Martin, Jr., and A. L. (Pat) Montegut, and against plaintiff dismissing their suit and maintaining the validity of the judgment of possession rendered herein on May 16, 1944, recognizing Charles St. Martin, Jr., and A. L. (Pat) Montegut as the residuary or universal legatees of the decedent, Amelie Montegut."
[31] In support of that conclusion and decree the district judge, in his well-considered written reasons for judgment, gives a thorough analysis of the evidence and announces his findings as follows:
[32] "The will is subject to two interpretations. Either, as contended by the plaintiffs, the clause in question simply named Charles St. Martin, Jr., and A. L. (Pat) Montegut co-executors, left them Five Hundred and No/100 ($500.00) Dollars to settle the estate, and left the balance of the estate undevised to go to her legal heirs as the case of intestacy; or, as contended by the defendants, this clause left the entire residue of the Succession to Charles St. Martin, Jr., and A. L. (Pat) Montegut.
[33] "On the original trial of the case prior to the decision of the Supreme Court, testimony was offered on behalf of defendants to show that the decedent had made statements shortly prior to her death that she had made her will and that she was leaving to some of her heirs and not to the others. Although this type of evidence was admitted by the Court at that time, no evidence of this kind was offered by the plaintiffs. After the case was remanded by the Supreme Court, the principal plaintiff, J. O. Montegut, for the first time testified that the decedent some months prior to her death asked him to take her to an Attorney for the purpose of advising her on the making of her will and that she stated in the presence of this plaintiff that she wished to make certain legacies and to leave the remainder of her estate as the law would provide. The attorney is dead and there is no supporting evidence to corroborate this self-serving narrative. Nor was any prior mention of this incident ever made to any of the other parties to this litigation. Under the circumstances, much weight cannot be attached to this testimony. In fact, this court is not of the opinion that its decision should be based upon any of the alleged oral statements of the decedent with reference to her will. Of far greater weight are the other extrinsic facts which cast light on her intent and are not as susceptible to the vagaries of human memory or desire.
[34] "Upon the reopening of the case, five witnesses testified on behalf of the plaintiffs and fifteen on behalf of the defendants, Charles St. Martin, Jr., and A. L. (Pat) Montegut. The witnesses who testified on behalf of plaintiffs were the principal plaintiff, J. O. Montegut, his mother, Mrs. G. Ferdinand Montegut, Sr., his brother, C. F. Montegut, Jr., his sister, Mrs. Laurence Montegut Zeigler, (the latter two being co-plaintiffs) and one William Clemens, who testified in rebuttal, but who knew nothing of the relationship between decedent and defendants, Charles St. Martin, Jr., and A. L. (Pat) Montegut. There are eleven plaintiffs and nineteen nominal defendants whose interest were with the plaintiffs in that they would share as legal heirs in the residue if the plaintiffs' position was sustained. Of those thirty legal heirs of the decedent, only the three mentioned took the stand in the support of the plaintiffs' position or to rebut the strong evidence of the defendants, Charles St. Martin, Jr., and A. L. (Pat) Montegut, as to the close affection and relationship existing between them and the decedent. On the other hand ten of the witnesses who testified on behalf of Charles St. Martin, Jr., and A. L. (Pat) Montegut are legal heirs of the decedent who would share in the residue under plaintiffs' construction of the will. Three of the witnesses for defendants are disinterested parties who knew the decedent intimately for many years.
[35] "Although, as always, there is some conflict in the testimony, the clear preponderance of the evidence shows that Charles St. Martin, Jr., lived with the decedent from infancy to a few years preceding her death; that she reared, treated, and loved him as her son; and that this affection continued until the decedent's death. Similarly, the clear preponderance of the evidence shows that the other defendant, A. L. (Pat) Montegut, until he attained twelve years of age, spent most of his time at the home of the decedent; that he would frequently after he had moved to the city of New Orleans, visit his aunt; that he was a favorite nephew; that she was very devoted to him and he to her and that he managed her financial affairs in New Orleans from 1928 to the date of her death. A review of the testimony in this case convinces the Court that a relationship alike to mother and child existed between decedent and Charles St. Martin, Jr., and that of Aunt and favorite nephew and confidant existed between decedent and A. L. (Pat) Montegut; that these two individuals were the closest to the decedent in her affection and that she had every reason to prefer them in her will and leave to them the balance of her property.
[36] "Accepting the Supreme Court's decision as to the ambiguity of the will and applying the established rule of law that the reasonable and natural presumption is that the testatrix intends to dispose of her entire estate and that she does not intend to die partly testate and partly intestate, Succession of Fertel,208 La. 614, 23 So.2d 234; Succession of Blakemore, 43 La.Ann. 845, 9 So. 496; Succession of McAuley, 29 La.Ann. [33], 35; it is the judgment of this Court, based on both the new evidence and that received prior to the Supreme Court's decision, that it was the intention of the testatrix to leave the balance of her estate to Charles St. Martin, Jr., and A. L. (Pat) Montegut and to name them her universal legatees."
[37] From the foregoing it is clear that the instant appeal presents only questions of fact. This being true the findings and conclusion of the trial judge should not be disturbed unless they appear to be manifestly erroneous. From my study of the record I cannot say that error has been committed. The evidence, as I appreciate it, is as analyzed above; and it sustains amply, in my opinion, the findings and conclusion announced.
[38] I respectfully dissent.