390 So.2d 905 (1980)
SUCCESSION of Virgie Griggs BRICE.
No. 14242.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1980.
*906 Robert G. Pugh, Shreveport, for plaintiffs-appellees Marjorie Gayle Taylor & Ronald L. Taylor, Adm. of the Estates of Minors, Ashley E. Taylor and David L. Taylor.
Bolin & Elkins by Bruce M. Bolin, Minden, for defendants-appellants James Arnold Griggs, John Bennett Griggs, and Sicily Ora Lindsey Griggs.
Richie & Richie by John A. Richie, Shreveport, for co-executors James Arnold Griggs, John Bennett Griggs, and Sicily Ora Lindsey Griggs.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
Appellants, James Arnold Griggs and John Bennett Griggs, in their capacity as co-executors of the will of their deceased sister, Virgie Griggs Brice, and as agents for their mother, Sicily Ora Griggs, appeal a judgment which construes the decedent's will to bequeath to her mother only the forced portion.
Appellees have filed a motion to dismiss the appeal taken by James and John Griggs in their capacity as co-executors contending that the appeal was untimely.
The case was argued and submitted on June 25, 1979; written reasons for judgment were assigned and filed on July 23, 1979; and the judgment was signed August 3, 1979. The clerk gave no notice of judgment as required by LSA-C.C.P. art. 1913.
On August 9, 1979, a motion for new trial was filed by "James A. Griggs and John B. Griggs, legal representatives of Sicily Ora Griggs", and it was denied by judgment *907 signed December 11, 1979. An order of suspensive appeal was obtained on January 8, 1980 by the co-executors and Sicily Ora Griggs, and the appeal bond was posted the same day.
Appellees contend that because James and John Griggs did not file a motion for a new trial in their capacity as co-executors that their appeal taken as co-executors more than four months after the judgment of August 3 is untimely because the suspensive appeal delays expired September 13, and the devolutive appeal delay expired October 15. Appellees cite LSA-C.C.P. arts. 2162,[1] 2123,[2] and 2087.[3] The argument advanced for dismissal of the appeal is extremely technical and considering the great favor with which appeals are viewed under our law it may well be that the motion for new trial filed by James and John Griggs as representatives of Sicily Ora Griggs could be construed to have suspended the judgment of August 3 to the extent that the delays for taking their appeal as co-executors did not begin to run until the new trial motion was denied, and therefore it was timely. See Thurman v. Star Electric Supply, Inc., 283 So.2d 212 (La.1973). However, we find it unnecessary to decide whether the delays for appeal were suspended by the new trial motion filed because we find that the delays for taking an appeal by the co-executors had never commenced to run at the time they perfected their appeal. Where no motion for new trial has been filed, a suspensive appeal must be taken within 30 days and a devolutive appeal within 60 days of the expiration of the delays for applying for a new trial as provided for in LSA-C.C.P. art. 1974. See LSA-C.C.P. arts. 2123 and 2087. The delays for applying for a new trial under Article 1974 do not commence to run until the day after the clerk has mailed the notice of judgment when it is required by LSA-C.C.P. art. 1913.
LSA-C.C.P. art. 1974: "The delay for applying for a new trial shall be seven days, exclusive of legal holidays. Except as otherwise provided in the second paragraph hereof, this delay commences to run on the day after the judgment was signed.
When notice of judgment is required under Article 1913, the delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913."
LSA-C.C.P. art. 1913: * * *
"Except as otherwise provided by Article 3307, when a case has been taken under advisement by the court notice of the signing of a final judgment therein shall be mailed by the clerk of court of *908 the parish where the case was tried to the counsel of record for each party, and to each party not represented by counsel.
If, at the conclusion of a trial a case is not taken under advisement but the court does not sign a judgment at the time, a party may make a request of record for notice of the date when the judgment was signed; and when such a request is made, the clerk shall mail such notice to the party requesting it or to his counsel of record.
The clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed.
Except as otherwise provided in the first three paragraphs of this article, notice of the signing of a final judgment is not required."
This case was argued June 25, 1979. It was not then decided. It was submitted (taken under advisement) and decided with written reasons July 23 and judgment was signed August 3. Under these circumstances notice of judgment was required by the second paragraph of LSA-C.C.P. art. 1913, and none was sent. The seven day delay for applying for a new trial "commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment." LSA-C.C.P. art. 1974.
Because there was no notice of judgment, the delay for applying for the new trial has not commenced to run. Since the appeal delays provided for in LSA-C.C.P. arts. 2123 and 2087 do not commence until the new trial delays have expired, they had not commenced to run when the co-executors took their appeal four months after judgment was signed. The appeal was timely. The motion to dismiss has no merit.
Virgie Griggs Brice died July 6, 1978, and her will dated June 4, 1964 which was probated in these proceedings, provides:
"I, Virgie Griggs Brice, being of sane and sound mind, and realizing the uncertainties of life, do make this my last will and testament.
1. I desire that all my just debts and funeral expenses be paid;
2. After the payment of my just debts and funeral expenses, I will and bequeath to my niece, Marjorie Gayle Griggs, all property of which I die possessed, whether the same be real or personal; and
3. I desire that her children will share equally with her. In case of the death of one of the heirs, I desire that share to be equally divided among the remaining heirs;
4. I desire that any necessary portion of my estate be used to provide for the treatment and comfort of my mother, Mrs. Ora Lindsey Griggs, throughout her lifetime;
5. I appoint my two brothers, James Arnold Griggs, and John Bennett Griggs executrix of this my last will and testament;
6. I desire that $1500 be provided each of my brothers for expenses incurred in the settling of my estate.
This will has been wholly written, dated and signed by me in my own hand at Shreveport, Louisiana on this fourth day of June, 1964.
 Virgie G. Brice /s".
James and John Griggs accepted their appointment as executors of their sister's estate by the terms of her will and proceeded with the administration of the succession. While the succession was under administration they were appointed by their mother, Sicily Ora Griggs, as her agents to administer all of her affairs including her interest in the estate of her daughter Virgie Griggs Brice.
The decedent left no descendents and her father had predeceased her. She was survived by her mother as her only forced heir.
A review of Paragraphs 2 and 3 of decedent's will reflects that she bequeathed all of her property to her niece, Marjorie Gayle Griggs, in Paragraph 2; and in Paragraph 3 declared that she desired Marjorie's children (of whom there were two) to share equally in the bequest. These bequests of all of decedent's property are in conflict with Paragraph 4 of the will and the mother's *909 legitime. Paragraph 4 of Virgie Brice's will could be construed as a bequest to her mother of all of testatrix's entire estate if all of it should be required to provide for her mother during her lifetime.
James and John Griggs, and Marjorie Gayle Griggs Taylor and her husband, Ronald L. Taylor (administrator of the estate of Marjorie's minor children Ashley and David Taylor), were unable to agree upon the interpretation of decedent's will.
The co-executors filed a Louisiana Inheritance Tax return and paid taxes upon the estate based upon declarations that Marjorie inherited one-fourth of the estate, each of her children inherited one-fourth of the estate, and decedent's mother inherited one-fourth of it.
After the administration was very near complete and the inheritance taxes paid, Marjorie and Ronald Taylor, as administrator of the estate of the two minor children of Marjorie, filed a rule against James and John Griggs, co-executors of decedent's succession, seeking to be sent into possession of their legacies subject to payment of the remainder of the debts which consisted principally of attorney fees and fees and expenses of the executors. The petition alleged that because of the ambiguity in the will of the testatrix, that the parties had agreed to interpret the will as bequeathing one-fourth of decedent's estate to Marjorie, one-fourth of decedent's estate to each of her two children, Ashley and David, and the remaining one-fourth of the estate to decedent's surviving mother and forced heir, Sicily Ora Griggs. The co-executors answered the rule and while admitting there had been a tentative agreement to interpret the will in the manner alleged by Marjorie and Ronald Taylor, the co-executors denied there had been a definitive agreement between the parties. The co-executors alleged "the completion of this succession may require a definitive interpretation by the court of decedent's will and strict full compliance with such interpretation". The executors prayed for the dismissal of the rule.
The minutes reflect that the rule was set for trial on June 25th, at which time it was argued and submitted. No testimony was taken. The trial judge in his written reasons for judgment rendered July 23, 1979, stated:
"The case was submitted on a stipulation of facts and the record of the succession. Although oral argument was held, neither of the attorneys have submitted briefs as to their respective positions or contentions."
The trial judge stated that the stipulation of facts reveal a tentative agreement as to the interpretation of the will, but that it had not been finalized. The trial judge specifically recognized that there was no evidence taken to aid and assist him in interpreting the will, and that there was nothing contained in the stipulation of facts which would assist the court in interpreting the will. We have examined the stipulation and agree with the trial judge that it does not provide enough facts to determine what the testatrix intended when she made the ambiguous and conflicting bequests contained in her will.
The trial court found Paragraph 4 of the will which related to testatrix's mother to be "unclear and ambiguous", and noted that it was the duty of the court to determine whether it was the intent of the testatrix to "bequeath the forced portion of her estate to her mother, or whether some other arrangement was intended such as, perhaps, an annuity or a life usufruct". The court then concluded there was not sufficient language in Paragraph 4 to reflect that the testatrix intended an annuity or usufruct. The trial court stated there was no language in Paragraph 2 (the bequest to Marjorie) or Paragraph 3 (the bequest to Marjorie's two children) indicating that these bequests were only of the naked ownership, and concluded these observations supported the conclusion that the testatrix did not intend to bequeath to her mother a usufruct. The trial court then determined the language in Paragraph 4 wherein the testatrix left to her mother "the necessary portion" established the testatrix intended to bequeath to her mother the forced portion *910 of the estate as required by law. The court decided under the will of decedent that Marjorie would receive one-fourth, her two children would each receive one-fourth, and the decedent's mother would receive one-fourth, and judgment was signed containing these adjudications.
Only James and John Griggs appeal. They assign as error the trial court's finding that the bequest to the decedent's mother was ambiguous. Appellants contend that the will should have been construed to have given the mother one-fourth of decedent's estate in full ownership and a usufruct over the other three-fourths of the estate. Appellants alternatively contend that the court should have construed the will as creating a debt against the estate during the lifetime of the mother.
The trial court's observation that the will was ambiguous is clearly correct. The first two bequests contained in the will would seem to reflect an intent on the part of the testatrix to leave all of her property in full ownership to her niece Marjorie, and to Marjorie's two children in equal proportions. There is no indication in the language of the bequests in Paragraphs 2 and 3 of the will that these legacies are to be subject to a usufruct in favor of testatrix's mother, nor is there any indication that these legacies are to be subject to the forced portion which is reserved by law to decedent's mother.
The language in Paragraph 4 of the will ("any necessary portion of my estate be used to provide for the treatment and comfort of my mother") contains no limit on the amount of decedent's estate that could be used for this purpose. Although the decedent's estate is substantial, it is foreseeable that its entirety could be consumed in providing for "treatment and comfort" of decedent's mother, and it is possible that decedent may have intended to have provided for this contingency when she included this paragraph within her will. There is no indication that this bequest to her mother shall first be satisfied before the bequests to Marjorie and her children are fulfilled. There is no way to ascertain from the contents of the will alone the intentions of the testatrix as mandated by LSA-C.C. art. 1712.[4] Only by using extrinsic evidence which is authorized by LSA-C.C. arts. 1714[5] and 1715[6] may the intent of the testatrix be determined.
In the decision of Giroir v. Dumesnil, 248 La. 1037, 184 So.2d 1 (1966), the court made the following statement with regard to the method to be used in interpreting an ambiguous will:
"When, however, the language of a will is ambiguous, resort must be had to all circumstances which may aid in ascertaining the testator's intention. LSA-C.C. Art. 1715; Succession of Smart, 214 La. 63, 36 So.2d 639; Succession of Montegut, 211 La. 112, 29 So.2d 583; Miller v. Hirsch, 110 La. 259, 34 So. 435.
Article 1715, LSA-C.C. provides:
`When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.' (Emphasis ours)
In Succession of Smart, supra, this Court succinctly stated the rule as follows:
* * * `Where there is ambiguity in the description of the legatee, or the thing which the testatrix intended to *911 bequeath, or the quantum or portion of the legatee, or where there is doubt as to the sense in which the words are used by the testatrix, resort may be had to extrinsic evidence. In fact, all circumstances throwing any light on the testatrix's intention must be considered. Revised Civil Code, Articles 1714, 1715 and 1716. Succession of Montegut, 211 La. 112, 29 So.2d 583.'
When a will is ambiguous, the court uses extrinsic evidence to determine what the words of the testator as written actually mean. The evidence is used to resolve ambiguity, not to rewrite the will or do violence to its terms. The court seeks to lay bare the intention of the testator. LSA-C.C. Arts. 1712, 1715." Id. at 6-7.
In this case the language of the testator in the will left it uncertain as to whether the testator intended to bequeath to his wife full ownership or to only give her a usufruct. By use of extrinsic evidence the court was able to determine that the intent of the testator was to give his wife full ownership. See also the Succession of Cardone, 271 So.2d 338 (La.App.2d Cir. 1972), where the court used extrinsic evidence to determine what property the testatrix intended to bequeath when she used the term "my home place".
The litigants, who were necessarily aware of the ambiguity contained in the will, offered no extrinsic evidence at the time the rule was tried for the purpose of establishing what the intentions of the testatrix may have been when she made the bequests contained in her will. Appellants now, while first contending the will is not ambiguous, a position completely untenable, have filed in the alternative a motion to remand the case to the trial court for the purpose of offering extrinsic evidence to show the true intent of the testatrix.
In the Succession of Montegut, 211 La. 112, 29 So.2d 583 (1947), the court held that a clause in the testatrix's will was ambiguous, and though extrinsic evidence had been taken at the trial of the case, some of which related to the relationship between testatrix and the legatees, and the circumstances surrounding them, the court found the evidence in the record with regard to this issue insufficient to determine the dispute. The court there remanded the case for:
"... parties litigant (both appellees and appellants) to introduce evidence in proof of any and all circumstances which may aid in the discovery of the intention of the testatrix with reference to the controverted provision, the evidence, of course, to be otherwise admissible and material." Id. at 588.
This court may remand a case to the trial court for the taking of additional evidence where it is necessary to reach a just decision. LSA-C.C.P. arts. 2082 and 2164; Gallagher v. Gallagher, 248 La. 621, 181 So.2d 47 (1965); Nereaux v. Rivet, 228 So.2d 172 (La.App. 1st Cir. 1969).
The trial judge here performed his function of deciding the case, but he recognized that the will was ambiguous and the party litigants had supplied him with no extrinsic evidence to aid him in reaching the testatrix's intent. He therefore used the only evidence available, the testament itself, to perform his function of deciding the case. The decision that the will leaves to the testatrix's mother only her legitime was based upon an interpretation of Paragraph 4 to the effect that testatrix bequeathed to her mother "the necessary portion", the trial court apparently concluding the testatrix was giving to her mother what was necessary to meet the requirements of the forced heirship law of this state. A review of Paragraph 4 of the will establishes while it uses the term "necessary portion" there is additional descriptive language ("of my estate be used to provide for the treatment and comfort of my mother... throughout her lifetime") which could be construed as making available to her mother far more than the forced portion if same was needed to provide her mother with "treatment and comfort". This observation makes it apparent that the trial judge's conclusion that testatrix intended for her mother to receive only the forced portion is a determination that cannot be arrived at from a review of the will, and it *912 becomes apparent that only by taking of extrinsic evidence can the intent of the testatrix be arrived at and justice done in this case.
We REVERSE and set aside the judgment appealed from and REMAND the case to the trial court for the purpose of permitting appellants and appellees to introduce evidence in proof of any and all circumstances which may aid in the discovery of the intention of testatrix with regard to the bequests made to her mother, her niece, and the children of her niece, and direct the trial judge, after this evidence is submitted, to render judgment in accordance with law.
NOTES
[1] LSA-C.C.P. art. 2162"An appeal can be dismissed at any time ... because there is no right to appeal ..."
[2] LSA-C.C.P. art. 2123"Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of:

(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;
(2) The court's refusal to grant a timely application for a new trial, if the applicant is not entitled to notice of such refusal under Article 1914; or
(3) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial, if the applicant is entitled to such notice under Article 1914."
[3] LSA-C.C.P. art. 2087"Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of:

(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;
(2) The court's refusal to grant a timely application for a new trial, if the applicant is not entitled to notice of such refusal under Article 1914; or
(3) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial, if the applicant is entitled to such notice under Article 1914.
When a devolutive appeal has been taken timely, an appellee who seeks to have the judgment appealed from modified, revised, or reversed as to any party may take a devolutive appeal therefrom within the delays allowed in the first Paragraph of this Article or within ten days of the mailing by the clerk of the notice of the first devolutive appeal in the case, whichever is later."
[4] LSA-C.C. art. 1712: "In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament."
[5] LSA-C.C. art. 1714: "In case of ambiguity or obscurity in the description of the legatee, as, for instance, when a legacy is bequeathed to one of two individuals bearing the same name, the inquiry shall be which of the two was upon terms of the most intimate intercourse or connection with the testator, and to him shall the legacy be decreed."
[6] LSA-C.C. art. 1715: "When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention."