AYRES, Judge.
This is a summary proceeding by rule in- ■ stituted by the Minden Bank & Trust Company, hereinafter referred to as “the bank,” as co-trustee of the Edmond L. Stewart Trust, also herein referred to as “the trust,” under authority of LSA-R.S. 9:2233, to secure instructions from the Twenty-Sixth Judicial District Court in and for Webster Parish, Louisiana, as to the proper interpretation to be placed upon certain provisions and as to the general principles to be followed in the administration of the trust which was created by the will of Edmond L. Stewart and previously probated by that court.
Subsequent to filing of the rule, the validity of the trust itself was put at issue. There was also engrafted upon the proceeding, over objections by the bank, a collateral proceeding to rescind certain conveyances from the universal legatee of the widow of Edmond L. Stewart, who would have succeeded to the property left in trust had he died intestate, to Dan W. Stewart, III, who claims to be the sole beneficiary of the trust.
Edmond L. Stewart, a long-time resident of Webster Parish, Louisiana, died on January 11, 1956. His will, dated August 17, 1955, was presented for probate before the lower court by his widow, Mrs. Jim Brown Stewart, and his executor, Dan W. Stewart, Jr. The “NINTH” article of the will created a trust in which the bank and Dan W. Stewart, Jr., were named co-trustees. The provisions of the trust are set forth in the aforesaid article which we quote:
“All of the remainder of my estate, I give and bequeath unto Minden Bank & Trust Company, Minden, Louisiana, and Dan W. Stewart, Jr., of Minden, Louisiana, in trust, with seizin and without bond, under the following terms and conditions :
“(a) This trust shall extend for the maximum time permitted under the laws of the State of Louisiana.
“(b) Said Trustees shall hold, manage, handle, control, protect and care for the trust estate in accordance with their best judgment, and so far as practicable shall retain the real estate intact, and shall preserve the timber lands by good forestry practices such as selective cutting and reseeding.
“(c) The Trustees shall have the power in their discretion, on such terms and conditions, and for such consideration as they may deem fit, to make any and all contracts involving all or any part of said property, including real rights, and servitudes applying to said real estate, including the right to sell, alienate, or otherwise dispose of said real estate, including the right to execute mineral leases, mineral and royalty sales; to sign division orders, enter unitization or working agreements, and with full power to lease or purchase, alienate, or sell any nature of property whatsoever, whether real, personal, or mixed, without restrictions and without Court approval.
“(d) Said Trustees are further authorized to sue and be sued, to receive and receipt for any and all monies due said trust estate.
“(e) Said Trustees shall have full power to invest and reinvest in unrestricted property at their discretion and to settle and adjust any claims against, or in favor, of this trust.
*611 “(í) The Trustees shall have all powers granted under the Trust Estates Act and the powers enumerated herein are not to be construed as a limitation upon the powers of said Trustees.
“(g) The Trustees shall keep complete and accurate accounts showing the complete status of the Trust Estate at all times.
“(h) The Trustees shall use any part of the income of said Trust, if necessary, for the health, comfort and well being of my wife, Mrs. Jim Brown Stewart, during her life time.
“(i) The Trustees shall be authorized to make charitable bequests out of said income in their discretion.
“(j) I have many nieces and nephews, both of the whole and the half blood, as well as their descendants, and said Trustees, at their discretion, shall be authorized to make loans or donations to them.
“(k) The Trustees shall have the power to accumulate the income until DAN W. STEWART, III, the beneficiary, is of the age of 65 years, at which time this trust shall terminate, taking into account all their powers to deplete the principal by making loans and donations as previously specified, it being my intention that the bulk of my estate be distributed among my relatives before the termination of this trust.
“(1) This Trust shall be known as the ‘EDMOND .L. STEWART TRUST’, and my intention in creating it is to provide for my family, subject to the discretion of said Trustees, as I am confident the Trustees can increase said estate.”
The provisions most relevant to the issues at hand are found in Paragraphs (a), (j), (k), and (1).
In due course and pursuant to the petition therefor by the widow and the executor, a judgment dated June 14, 1956, was rendered sending the bank and Dan W. Stewart, Jr., into possession of the property remaining after satisfaction of debts and special legatees as “Trustees for the ‘Edmond L. Stewart Trust’.” The bank and Dan W. Stewart, Jr., have served as trustees since the date of the aforesaid judgment, a period of approximately 17 years. Neither has claimed, as a trustee, to be a beneficiary under the will.
During meetings conducted by the bank’s Trust Committee, of which Dan W. Stewart, Jr., was a member, in December of 1967 and April of 1968, a decision was reached that, in the course of the administration of the trust, a substantial distribution should be made to the decedent’s nieces and nephews and their descendants. To that end, the trust officer of the bank was instructed to obtain information necessary to determine the identity and location of. the persons to whom the distribution should be made. Dan W. Stewart, Jr., testified that during the course of these meetings he initially raised the question whether, as a practical matter, all of the parties entitled to share in the distribution could be located, but he otherwise consented to and approved the minutes of the meeting authorizing the action. Thereafter, all of the parties except one were located and, in July of 1968, a disbursement of $50,000, by means of checks signed by Dan W. Stewart, Jr., was made to them.
Soon after the distribution was made, Dan W. Stewart, III, communicated to the bank, apparently for the first time, insofar as it appears from the record, his belief that he was entitled to receive the entire property of the trust as its sole beneficiary, and that the $50,000 distribution was improper. Subsequently he unsuccessfully attempted to secure the resignation of the bank as co-trustee of the trust. He thereafer related to various officers of the bank that he had reached the conclusion some question existed as to the validity of the trust.
Responsively, the bank filed the rule in this proceeding requesting that the court *612 confirm the construction of the trust in substantially the manner in which the bank and Dan W. Stewart, Jr., as co-trustees, had previously administered it and declare that the collateral heirs of Edmond L. Stewart were intended to be the beneficiaries of the trust. All of the nieces and nephews of Edmond L. Stewart or their descendants wer.e duly cited as parties to the proceeding as were Dan W. Stewart, Jr., co-trustee, and Dan W. Stewart, III. Also joined as a party to the proceeding was Miss F. Dell Brown, the universal legatee of her sister, Mrs. Jim Brown Stewart, widow of Edmond L. Stewart, as aforesaid, who would have inherited the community property of Edmond L. Stewart in the absence of a will.
For convenience of discussion, the nieces and nephews and/or their descendants of Edmond L. Stewart, excluding Dan W. Stewart, Jr., and Dan W. Stewart, III, will be referred to in this opinion in the same manner as they are referred to in the trust instrument itself, that is, as the “family” of Edmond L. Stewart.
Answers were filed by or on behalf of the members of the'family, all of whom, in essence, adopted the interpretation of the bank as to the identity of the persons who were intended to be the beneficiaries and, as such, entitled to receive the property under the trust.
Dan W. Stewart, III, filed an answer alleging that the proper construction of the trust was such as to constitute him as its sole beneficiary. He further alleged, by reconventional demand, that by an act dated December 4, 1969, as amended or amplified by an instrument dated April 27, 1970, he acquired from Miss Dell Brown all of her rights, titles, claims, and interest in the estate of Edmond L. Stewart “if the will of the decedent be annulled for any cause whatever” and, by an amended answer, claimed that the trust provisions of the will, which he and his father had prepared as attorneys for the decedent, were null, void, and of no effect because they established or created a substitution and/or fi-dei commissa in that they suspended, until a future date, the vesting of title; they purported to vest in the trustees the power to appoint persons in whom the trust property would ultimately vest; and the trust instrument was so uncertain and vague as to the manner in which the trust property would ultimately vest as to render its provisions void.
Miss Dell Brown initially filed a motion in proper person to be dismissed from the proceeding for the reason that she had conveyed any interest she might have in the subject matter to Dan W. Stewart, III. On the morning of the trial she, however, filed an answer withdrawing her prior motion and, asserting that the will was null and void, claimed that she had succeeded to the interest of the widow of the decedent and was thus entitled to all of the property comprising the trust. Further, assuming the role of plaintiff-in-reconvention against Dan W. Stewart, III, she made a collateral attack on the validity of the conveyances which she executed in his favor purporting to transfer to him all' of her interest in the estate of the decedent and prayed that such instruments be set aside on the grounds that they were signed through error of fact, as well as of law, and were made without consideration.
The bank and the members of the family filed responses to the claims of Dan W. Stewart, III, denying the invalidity of the trust provisions of the will and further asserting that, because of the fiduciary relationship existing between the decedent, the trust, and the bank, on the one hand, and the firm of Stewart & Stewart, a law partnership composed of Dan W. Stewart, Jr., and Dan W. Stewart, III, on the other, he was legally estopped from questioning the validity of the trust; and that, in any event, if the trust were defective, the interest he acquired from Miss Dell Brown inured to the benefit of the persons the decedent intended to' receive the property; namely, the trustees — for the use and benefit of the family of Edmond L. Stewart.
*613 With the proceeding in this posture, the matter was tried, and after trial the court concluded:
(1) It was the intent of Edmond L. Stewart that all his nieces and nephews be the beneficiaries of the trust, with the income and principal vested by-root or stirpes in as many shares as there were nieces and nephews of the decedent, with one share going to each surviving niece and nephew and one share to each line of each predeceased niece or nephew, except for the share of Dan W. Stewart, Jr., since he was a co-trustee, whose share would go to his children including Dan W. Stewart, III;
(2) It was the intent of Edmond L. Stewart that the co-trustees make distribution to each beneficiary as against the vested interest of each in the trust property at such times as the trustees shall deem appropriate, provided that substantial distribution of the trust estate be accomplished before Dan W. Stewart, III, reaches the age of 65, the date of the trust termination, and in such manner as will preclude the total value of the property from being diminished, if the trustees can do so; and, as a corollary of the foregoing, that the trust instrument does not contain a prohibited substitution or fidei commissum; nor does it accord the co-trustees the power to determine in whom or in what proportion the trust property should vest.
It may be noted that in connection with the issue of the existence vel non of a substitution or fidei commissum, the trial court ruled that any question which might have been raised with respect to the contingency income bequest to the decedent’s widow was rendered moot by her death.
Incidental to the issue of the nature and scope of powers granted the trustees, the trial court held that the provisions of Paragraph (i) of the trust, with respect to discretionary charitable bequests, are prec-atory and not to be regarded as written.
In accordance with the aforesaid findings and conclusions of the court, the court decreed:
That the trust created by the will of Edmond L. Stewart was valid;
That the trust shall continue until Dan W. Stewart, III, one of the trust beneficiaries, reaches the age of 65 years, at which time the trust shall terminate;
That the sole beneficiaries of the trust are the nieces and nd|>hews of Edmond L. Stewart who survived him and the descendants of the nieces and nephews who predeceased him; and, further, that the property comprising the trust is vested by roots or stirpes in as many shares as there were nieces and nephews of Edmond L. Stewart, with one share going to each surviving niece or nephew and one share to the descending line of each predeceased niece and nephew, except for the share of Dan W. Stewart, Jr., a co-trustee of the trust, which is vested in the latter’s children; and
That the Minden Bank & Trust Company and Dan W. Stewart, Jr., co-trustees of the trust, shall distribute to the trust beneficiaries from time to time, in such manner as may be deemed prudent by the co-trustees, the income and principal comprising the trust so that by the date of the termination of the trust the bulk of the assets thereof shall have been distributed.
From the judgment thus rendered and signed, the Stewarts, Dan W., Jr., and Dan W., Ill, and Miss Dell Brown appealed.
General rules have been formulated for the interpretation of last wills and testaments. In the interpretation foremost in importance is the intention of the testator which must be ascertained without departing from the significance of the terms of the testament. LSA-C.C. Art, 1712. Dispositions must be understood in the sense in which they can have effect, rather than *614 that in which they can be accorded none. LSA-C.C. Art. 1713. In cases of uncertainty, ambiguity, -or obscurity as to the identity of the legatees (LSA-C.C. Art. 1714), or when, from the language employed in the testament, the intention of the testator cannot be ascertained, resort must be had to all circumstances from which his intention may be discovered. LSA-C.C. Art. 1715.
In the Succession of Fertel, 208 La. 614, 23 So.2d 234, 238 (1945), with reference to the aforesaid codal provisions, the Supreme Court pointed ^ut:
“These rules have been strictly adhered to by this Court in numerous cases involving the interpretation of wills. Typical of these cases is the Succession of McBurney, 165 La. 357, 115 So. 618, holding that the first and cardinal rule among the general rules for the interpretation of wills is that the intention of the testator must be ascertained, and all other rules are only means to that end. And Succession of Wilcox, 165 La. 803, 116 So. 192, holding that the only function of the Court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will.
“It is evident from a reading of the will that it was written by the testatrix without the aid of counsel. The law is indulgent in all such cases. It exempts language from technical restraint and obeys the clear intention however informally conveyed. If obscured by conflicting expressions, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and, of two interpretations, it selects that which saves from total intestacy. The testator’s intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally. Succession of Blakemore, 43 La.Ann. 845, 9 So. 496.” (Emphasis supplied.)
The aforesaid rules and their application were also discussed in Giroir v. Dumesnil, 248 La. 1037, 184 So.2d 1, 6-7 (1966), wherein it was stated:
“The defendants rely mainly upon Succession of Rusha, 158 La. 74, 103 So. 515, as requiring the rejection of extrinsic evidence in the present case. A perusal of the decision discloses the court found the disputed codicil unambiguous and properly disregarded the extrinsic evidence. The decision is not authority for rejecting extrinsic evidence to aid in the construction of ambiguous wills.
“We agree with defendants that testamentary dispositions can be made only in writing. LSA-C.C. Art. 1576; Succession of Shows, 246 La. 652, 166 So.2d 261; Succession of Rusha, supra [158 La. 74, 103 So. 516], We also agree that when a will is free of ambiguity extrinsic evidence of the testator’s intention must be rejected. ... . Succession of Maginnis, 158 La. 815, 104 So. 726; Succession of Rusha, supra; Theall v. Theall, 7 La. 226.
"When, however, the language of a will is ambiguous, resort must be had to all circumstances which may aid in ascertaining the testator’s intention. LSA-C.C. Art. 1715; Succession of Smart, 214 La. 63, 36 So.2d 639; Succession of Montegut, 211 La. 112, 29 So.2d 583; Miller v. Hirsch, 110 La. 259, 34 So. 435.
******
“In Succession of Smart, supra, this Court succinctly stated the rule as follows :
“ * * * ‘Where there is ambiguity in the description of the legatee, or the thing which the testatrix intended to bequeath, or the quantum or portion of the legatee, or where there is doubt as to the sense in which the words are used by the testatrix, resort may be had to extrinsic evidence. In fact, all circumstances *615 throwing any light on the testatrix’s intention must be considered. Revised Civil Code, Articles 1714, 1715 and 1716. Succession of Montegut, 211 La. 112, 29 So.2d 583.’
"When a will is ambiguous, the court uses extrinsic evidence to determine what the words of the testator as written actually mean. The evidence is used to resolve ambiguity, not to rewrite the zcdll or do violence to its terms. The court seeks to lay bare the intention of the testator. LSA-C.C. Arts. 1712, 1715.” (Emphasis supplied.)
The deceased had no family other than his wife, who was otherwise provided for in his will, and the descendants of his deceased brothers and sisters. He maintained a close family relationship with all of them. He sponsored family reunions for many years prior to and until the date of his death. A family history of a sort was kept where the names were recorded. Many photographs of the family were collected. The language of the will leaves no doubt that the deceased desired his estate be divided among his various nieces and nephews or their descendants, and for it to be managed and administered so as to permit its liquidation over a reasonable period of time without loss or diminution in value, in order that the greatest benefits possible could be realized from his property for those whom he intended as his beneficiaries. This intention was confirmed by the testimony of Dan W. Stewart, Jr., draftsman of the will. His testimony, in this regard, was as follows:
“Q. And it was the intention of the client to create a trust which would provide for his family ?
A. That’s correct.
Q. And that’s what he said ?
A. That’s correct.
Q. And that’s what you sought to do by this instrument ?
A. Attempted to, at least.
Q. Yes sir. To create a trust which would provide for his family ?
A. That’s correct.
Q. To create a trust which would be distributed amongst the relatives before the termination of the trust?
A. That’s correct.
Q. To create a trust which would serve as a fund from which gifts or loans could be made to the nieces and nephews of whole and half blood?
A. That’s correct.
Q. And that’s what this is all about?
A. That’s correct.
Q. And that’s what he wanted done?
A. That’s correct.
Q. And that’s what you set out to do?
A. (No audible .answer.)
Q. Create a trust for the benefit of the whole family ?
A. That’s correct.
Q. Create a trust where the trustees could make gifts and loans to the family, as against the trust property, as against an interest -they might have in the trust ?
A. That’s what we have done.”
The testimony of Dr. W. M. Allums, a nephew of the deceased, called to the hospital where his uncle was hospitalized to witness the execution of his uncle's will, is of the same import as that of Dan W. Stewart, Jr. Dr. Allums testified:
“Q. Dr. Allums, I notice you are a witness on this will, is that correct?
A. Yes, sir.
Q. You did witness the will ?
*616 A. Yes, sir.
Q. Would you tell me how you came to witness the will ?
A. On the day the will was witnessed, Mr. „Dan Stewart, Jr., came to my office in the Physicians & Surgeons Building, then at 803 Jordan in Shreveport, and asked if I would be kind enough to witness the will and I told him that I would.
Q. I see. And he came into your office at that time ?
A. Yes, sir.
Q.- Did you visit with Dan Stewart, N-?
A. Yes, sir.
Q. I see. Did he tell you about the will at the time ?
A. He told me some things about it; he explained what the uh — the will was to set up a trust and the mechanism of which the trust was created and how long it would last and that sort of thing.
Q. I see, did he tell you for whose benefit it was ?
A. He told me that the trust was for the benefit of the members of his family.
Q. I see.
A. ... of Uncle Edmond’s family-
Q. Of Uncle Edmond’s family?
A. Right.
Q. Mr. Dan Stewart, Jr., told you that the trust was for the ....
A. Yes, that’s right.
Q. And did he identify who the members of the family were ?
A. His nieces and nephews.
Q. And did he tell you how long the trust was to last ?
A. The trust was to last until Dan Stewart, the III, reached the age of sixty-five.
Q. All right, sir. Now, did he tell you anything about what was to happen at age sixty-five ?
A. At that time, it was my understanding the trust would be all dispensed with — gone—all the property would be divided by then. There would be nothing left.
Q. I see. And he explained that to you?
A. Yes, sir.
Q. All right, sir. And where did you go from your office?
A. We went over to his room in the hospital which was on the third floor in the Physicians & Surgeons Hospital.
Q. And what happened there ?
A. There we were joined with some other witnesses including Mr. Leroy Scott, an attorney in Shreveport, and we witnessed the will. The will was signed, and the witnesses signed, and so forth.
Q. All right, sir. Did Uncle Edmond say anything at the time about the will?
A. No, except that he just wanted to help take care of the members of his family — nieces and nephews.
Q. Did he say specifically nieces and nephews ?
A. Right.
Q. Did you have occasion to ever discuss it with him after that ?
A. No, sir.
Q. I see. On one occasion then, at the time of the confection of the will, *617 Uncle Edmond told you that it was for the purpose of taking care of the members of the family.
A. Yes.
0. which he identified as nieces and nephews ?
A. Right.
Q. And that was at the very time he signed the will.
A. Yes.
Q. Is that correct ?
A. Yes, that’s right.”
In interpreting the trust, our learned brother of the district court clearly and concisely set forth the facts and reached, in our opinion, a proper and correct conclusion as to the validity of the trust. In the course of his opinion, he stated:
“It is apparent that the trust contains language which seemingly is inconsistent with other language. For example, under paragraph (a), he states that the trust is to continue for the maximum time permitted under the laws of Louisiana, and in paragraph (k) he sets out that the trust will terminate whe», the beneficiary Dan W. Stewart, III, reaches the age of 65. Paragraph (b) states that the trustees shall so far as is practicable retain the real estate intact, and paragraph (k) states that it is his intention that the bulk of the estate be distributed among his relatives before the trust is terminated. The only time the word beneficiary is used is in paragraph (k) when he states that the trustees shall have the power to accumulate the income until the beneficiary Dan W. Stewart, III, is of age 65, at which time the trust will terminate, but in other places, especially paragraphs (j), (k) and (1), the language indicates that all his nieces and nephews are the beneficiaries of this trust.
“The extrinsic evidence, which is properly admissible if the testator’s intentions cannot be ascertained from the language of the will, consisted primarily of the testimony of persons who purportedly knew the testator very well, including significantly, in the opinion of the court, the testimony of Dan W. Stewart, Jr., the co-trustee and preparer of the will. He testified without contradiction that it was the testator’s intention to create a trust that would provide for his family. Dr. W. L. [W. M.] Allums, a witness to the will, testified that the testator told him that the purpose of the will was for taking care of his nieces and nephews. Dr. Allums also testified, without qualification, that Dan W. Stewart, Jr., told him that the purpose of the trust was to provide for members of his family, the nieces and nephews, and that it would last until Dan W. Stewart, III, reached 65, by which time the property would have been divided.
“It is the opinion of the court that the language of the document itself read in its entirety, considered with the extrinsic evidence, establishes by a preponderance of the evidence that the intention of the decedent was that all his nieces and nephews or their descendants should be the beneficiaries of the trust. This being the case, it follows that the court is of the opinion that the will does not give the trustees the power to determine in whom or in what proportion the trust property should vest. Rather, the trustees are given the authority to make distributions to each-beneficiary as against his interest in the trust property at such time as the trustees shall deem appropriate provided it is done before Dan W. Stewart, III, reaches the age of 65, and in such a manner as will preclude the total value of the property from being diminished if the trustees can do so. Since there is no expression to the contrary, the property is vested by root or stirpes in as many shares as there were nieces or nephews of the decedent with one share going to each surviving niece or nephew and one share to each line of *618 each predeceased niece or nephew except for the share of Dan W. Stewart, Jr., which does to his children since he is a co-trustee.
“It is the further opinion of the court that any issue which might have been raised because of the contingent bequest to the decedent’s widow in paragraph (h) has become moot with her death.
“It is the further opinion of the court that the provisions for the charitable bequest in paragraph (i) are precatory.”
However, a question of' importance is whether the bequest contains a prohibited substitution. Many cases involving questions relating to this subject have been cited by the parties in this case. Many of those cases employ the same or similar language and cite the same authorities. Typical is the language used in Succession of Simms, 250 La. 177, 195 So.2d 114 (1965), a case concerning the will of a decedent who died in 1959. In that case the decedent left property to named trustees “to be held by them during the natural life of my granddaughter,” and then, at her death, the property zoas to be vested in the testator’s great granddaughter. This the court correctly held to be a prohibited substitution.
The facts of the Simms case and of those cited therein distinguish those cases from the instant case. Pertinent are these observations made in the Simms case:
“Despite criticism levelled by some legal writers at the decisions in Succession of Guillory, 232 La. 213, 94 So.2d 38, rendered by this court, and in Succession of Meadors, La.App., 135 So.2d 679, rendered by the Court of Appeal for the Second Circuit, certiorari denied by us, based on the fear that these decisions evidence an attitude on the part of the court to consider all trusts as containing prohibited substitutions, a mere reading of these decisions will readily disclose each involved wills in which the testator first bequeathed the property to named trustees to hold until the death of the beneficiaries, when the second bequest of the property to a third person and/or institution would take place. In other words, title to the property did not vest in the principal legatees until the trusts terminated, at which time there was a second transfer — a second vesting- — of title, referred to by one writer as the ‘hallmark of the prohibited substitution.’ Since there was no vesting of the property in the principal legatee at the testator’s death, only in futuro, the fact that it was stipulated in the will the property was bequeathed to the trustee ‘in trust’ contained on [sic] magic formula to cure this obvious substitution.”
195 So.2d 114, 133.
In pointing up these differences, the trial court made this appropriate observation:
“In the opinion of the court, the disposition made by Edmond L. Stewart is different from that in the Simms case and the other cases cited such as the Guillory case and the Meadors case. In all of these cases, the testator first bequeathed the property to named trustees to hold until the death of beneficiaries, and then to someone else. Such a bequest as that is a prohibited substitution. The Edmond L. Stewart trust does not make this double vesting. It authorizes the trustees to distribute the property to his family sometime prior to the date on which Dan W. Stewart, III, attains the age of 65, and states that it is his intention that the bulk of his estate be distributed among his relatives before the trust is terminated. There is no obligation here to ‘preserve’ the trust property for a second beneficiary, or to keep the title ‘inalienable’.”
Counsel for Stewart, III, nevertheless contends that instead of the decedent leaving his property to his nieces and nephews and their descendants he left it to the two trustees, ultimately to be divided among the aforesaid members of his family. Thus, it is contended, this constitutes a prohibited substitution.
*619 This appears to be a mere play upon the use of language. The bequest to the trustees was not to them as owners or as beneficiaries but “in trust,” subject to the terms and conditions of the trust by which, as heretofore noted, the testator clearly and unmistakably bequeathed the property placed in trust to the testator’s family—his nieces, nephews, and their descendants. The trustees were charged with the administration of the property pending its distribution to the beneficiaries. As also noted, neither trustee has claimed by virtue of his appbintment as trustee that he was a beneficiary under the will.
Reliance by Stewart, III, is placed in the language of the Supreme Court in its discussion of the Guillory and Meadors cases quoted hereinabove from Succession of Simms, supra (250 La. 177, 195 So.2d 114, 133). Those expressions are inapplicable here. Completion of the distribution of the assets to the beneficiaries was directed to be made prior to termination of the trust.
Redundant and unnecessary expressions of the testator’s wishes, requests, and instructions as to the manner in which the trust provisions of the will should be carried out are mere precatory statements and are to be disregarded as if not written. Such expressions are not binding upon the trustees nor the beneficiaries and do not affect the validity of the will. Succession of Barry, 250 La. 435, 196 So.2d 265, 268 (1967); Succession of Maguire, 228 La. 1096, 85 So.2d 4 (1955); Girven v. Miller, 219 La. 252, 62 So.2d 843 (1951); Succession of Hall, 141 La. 860, 75 So. 802 (1917).
In thus considering the terms of the trust provisions of the will, with the removal of all extrinsical uncertainties and ambiguities, we are in accord with the conclusions reached by the trial judge that the expressed intention of the testator is clear and that the will is not void by reason of either a prohibited substitution or a fidei commissum.
However, we are not in accord with the conclusion of the trial court that Dan W. Stewart, Jr., forfeited his rights as beneficiary under the will by reason of his appointment and service as a co-trustee of the estate. Disqualification would apparently extend only to the position of co-trustee. The “Trust Estates Law,” LSA-R.S. 9:1791 et seq., in effect at the time the testator’s will was executed and at the time of his death, but which statute has since been repealed, provided, in § 1874, that:
“A beneficiary of a trust shall not be the sole trustee or one of two trustees of a trust; but beneficiaries may be trustees so long as they are outnumbered by trustees who are not beneficiaries.”
It therefore logically follows that so long as Dan W. Stewart, Jr., survives, his children are not beneficiaries under the will, which instrument named as beneficiaries only the nieces and nephews of the deceased and the descendants of those nieces and nephews who had died.
As for the duration of the trust, the trust instrument first provides that: “This trust shall extend for the maximum time permitted under the laws of the State of Louisiana.” A further provision follows in the instrument to the effect that the trust shall terminate upon the date Dan W. Stewart, III, attains the age of 65 years.
We are generally in accord with the trial court’s conclusion that the trust terminates on the date Dan W. Stewart, III, reaches the aforesaid age of 65, not, however, for the precise reason stated by the trial court, that is, that he was a beneficiary. The Trust Estates Law, LSA-R.S. 9:1794, as amended by Act 209 of 1952, with reference to the maximum allowable period, provided:
”Unless an earlier termination is required by the trust instrument or by the proper court, every inter vivos or testamentary trust created under this Chapter, other than such as may be estab *620 lished by employers for the benefit of their employees, shall terminate:
“(1) At the expiration of ten (10) years from the settlor’s death as to a beneficiary which is not a natural person;
“(2) At the expiration of ten (10) years from the settlor’s death as to a beneficiary who is a natural person or until the death of the beneficiary, whichever is the longer period;
“If the terms of the trust purport to require a period of duration as to any beneficiary longer than the maximum allowable period set forth above, but the trust is otherwise valid under this Chapter, the trust shall be enforced as to such beneficiary for the maximum allowable period, and shall then be terminated.” (Emphasis supplied.)
Therefore, we conclude that, even though there may be surviving beneficiaries, -the trust will terminate on the date Dan W. Stewart, III, attains the age of 65 years unless an earlier date is required by the court. That was the date fixed in the trust instrument for the trust’s termination.
In view of our holding as to the validity of the trust provisions of the will, we do not deem it necessary to discuss the remaining issues pertaining to the right or interest of certain of the parties to contest the validity of the will or their estoppel to assert its invalidity. Nor do we find any need to discuss any of the other issues presented by the pleadings or developed during the trial, such as the purported transfer from Miss Dell Brown to Dan W. Stewart, III.
For the reasons assigned, the judgment appealed should be, and it is hereby, amended to include Dan W. Stewart, Jr., as one of the beneficiaries designated in the will in lieu of his children, and, as thus amended, the judgment is affirmed at appellants’ costs.
Amended and affirmed.