SUCCESSION OF MARIAN ETHEL PLANT PETRY

NO. 23-CA-474

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 823-478, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

April 24, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and John J. Molaison, Jr.

<u>**VACATED AND REMANDED**</u>
  **MEJ**
  **SMC**
  **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
EDWARD D. SIREN, III, IN HIS CAPACITY AS INDEPENDENT EXECUTOR
OF THE ESTATE OF EDWARD D. SIREN, JR.

     Alexandre E. Bonin

     R. Christian Bonin

     Jean-Marc Bonin

     Paul A. Bonin

COUNSEL FOR DEFENDANT/APPELLEE,
CATHOLIC CHARITIES ARCHDIOCESE OF NEW ORLEANS

     Richard A. Bordelon

     Todd R. Gennardo

     Ian P. Gunn

COUNSEL FOR DEFENDANT/APPELLEE-2ND APPELLANT,
GREATER NEW ORLEANS EDUCATIONAL TELEVISION FOUNDATION
("WYES"), UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE,
CHILDREN'S HOSPITAL NEW ORLEANS, NATIONAL WILDLIFE
FEDERATION, LOUISIANA WILDLIFE FEDERATION, INC. AND BRIDGE
HOUSE CORPORATION

     Peter J. Rotolo, III

     A. Elyce Ieyoub

COUNSEL FOR DEFENDANT/APPELLEE-2ND APPELLANT,
BRIDGE HOUSE CORPORATION

     Anne E. Raymond

     Tyler J. Arbour

**JOHNSON, J.**

Appellants, Greater New Orleans Educational Television Foundation ("WYES"), United States Olympic & Paralympic Committee, Children's Hospital New Orleans, National Wildlife Federation, Louisiana Wildlife Federation, Inc., and Bridge House Corporation (collectively "the Charitable Legacy Defendants"), and the Intestate Heirs, represented herein by Edward D. Siren, III, in his capacity as Independent Executor of the Succession of Edward D. Siren, Jr. ("Siren"), seek review of the 24th Judicial District Court's May 31, 2023 declaratory judgment in favor of Appellee, Catholic Charities Archdiocese of New Orleans ("Catholic Charities"), that found the late Marian Ethel Plant Petry's testamentary bequest to "Hope Haven in Marrero, Louisiana" has not lapsed and ordered that the bequest be distributed to Catholic Charities. The Charitable Legacy Defendants and Intestate Heirs also seek review of the court's June 21, 2023 judgment denying the Intestate Heirs' motion for a new trial. For the following reasons, we vacate the district court's May 31, 2023 judgment and remand the matter for further proceedings.

## *FACTS AND PROCEDURAL HISTORY*

Marian Ethel Plant Petry died testate at the end of 2021. David T. Pointer, whom she named as Independent Executor of her estate with full seizin and without bond, successfully petitioned the court to probate her will and confirm his appointment a few days after her death. Mrs. Petry married twice; she divorced her first husband, and her second husband, John Henry Petry, Jr., preceded her in death. The couple had a separate property regime, Mrs. Petry neither bore nor adopted any children, and her parents also predeceased her. Her August 2012 will made the following testamentary bequest:

> I give and bequeath the property of which I die possessed equally to the following charities:

1) Childrens Hospital, New Orleans, Louisiana;
2) Hope Haven in Marrero, Louisiana;
3) Back Bay Mission, Biloxi, Mississippi;
4) Bridge House, New Orleans, Louisiana;
5) National Wildlife Federation;
6) Metropolitan Battered Women's Program, Inc.;
7) Jefferson Parish, SPCA;
8) Magnolia School, Jefferson Parish, Louisiana;
9) Louisiana Wildlife Federation;
10) Channel 12 WYES; and
11) United States Olympic Committee[1]

In the fall of 2022, Pointer filed a petition for declaratory judgment and averred the following:

- All charities have been identified by their correct legal and current name (if the name has changed) and tax exempt status and are in good standing except for Hope Haven in Marrero, Louisiana, which is now defunct;
- The land and buildings on which Hope Haven once operated are owned by the Archdiocese of New Orleans (hereinafter the "Archdiocese");
- There are five non-profit businesses listed on the Louisiana Secretary of State Business Listings related to Hope Haven including Hope Haven-Madonna Manor, The Hope Haven League, Hope and Healing Haven, Hope Haven Farms, Inc., and the Hope Haven League. All of these businesses are listed as inactive; and
- The Archdiocese has ceased to operate any facilities for residential treatment of unwed mothers and troubled youth, which was the original purpose of Hope Haven.

Catholic Charities, and the Estate of Edward Daniel Siren, Jr., represented by Mr. Siren, III, and all named legatees besides Hope Haven, were made defendants to Mr. Pointers' petition.

Children's Hospital New Orleans ("CHNO"), Greater New Orleans Educational Television Foundation ("WYES"), Louisiana Wildlife Federation, Inc. ("LWF"), National Wildlife Federation ("NWF"), United States Olympic & Paralympic Committee ("USOPC"), and Magnolia Community Services, Inc. ("MCS"), as a collective, as well as Catholic Charities and Bridge House, answered

---

[1] Notably, the late Mr. Petry's 2007 will left all of his property to the first eight charities included in Mrs. Petry's bequest, mentioned above, as contingent legatees, in case she preceded him in death.

the petition and filed memoranda. Attached to the Catholic Charities memorandum was the affidavit of Sister Marjorie Hebert, MSC, the current President and CEO of Catholic Charities; a May 1985 extract of a meeting of the membership and board of the Archdiocese of New Orleans transferring the management, operation, control and maintenance of all institutions and/or programs of Hope Haven/Madonna Manor to Associated Catholic Charities; a June 1985 meeting minutes extract of the membership and board of Associated Catholic Charities outlining adopted resolutions in connection with assuming responsibility for Hope Haven/Madonna Manor; and a copy of a commercial search from the Secretary of State's website that showed that Catholic Charities was previously named Associated Catholic Charities of New Orleans, Inc. and Sr. Hebert is the registered agent and President of the organization.

Siren filed a Dilatory Exception of Unauthorized Use of Summary Proceedings and Memorandum in Support of the Exception urging that the proceeding, seeking declaratory relief in connection with the interpretation of a testamentary disposition, should be conducted as an ordinary proceeding, and filed an answer and a Response to the Petition for Declaratory Judgment. Pointer, in his capacity as independent executor for the Succession of Marian Petry, filed an Opposition to the Dilatory Exception.

The court heard the exception of unauthorized use of summary proceedings in January 2024. The Intestate Heirs subpoenaed Sr. Hebert for that date, but she was travelling abroad. The Intestate Heirs argued that they had no notice of Catholic Charities' basis to support a conclusion that the legacy to Hope Haven had not lapsed, and whether the legacy had lapsed could be a factual determination ripe for summary judgment at some point, but there was no need for rapid adjudication of the issue at that time. Catholic Charities argued that it was always intended to be the recipient of the legacy, because Hope Haven was one of its

ministries, and in the alternative, under the unincorporated association statute [La. R.S. 12:215, *et seq*.], it should receive the legacy. After determining that there was no dispute amongst the parties regarding the facts of the case, the district court ruled that summary proceedings were appropriate and denied the Siren's exception on behalf of the Intestate Heirs.

All parties stipulated that the facts stated in the Succession's Petition for Declaratory Judgment were true. However, the Legacy Defendants argued that the will was clear and unambiguous, and extrinsic evidence should not be used to determine the testator's intent. They argued that the legacy to Hope Haven lapsed because it ceased operations four years before Mrs. Petry executed her will, the will contained a universal legacy because it disposed of the entirety of her estate, and therefore, the legacy should accrete to the other legatees.

The Intestate Heirs agreed with the Legacy Defendants about the lapsed legacy, but countered that the use of the word "equally" in the bequest created fractions, which would make Mrs. Petry's bequest a general legacy to separate legatees. Thus, the Intestate Heirs would receive the legacy instead of Hope Haven based on the laws of accretion. Catholic Charities responded that other legatees were not referred to by their proper legal names, and the court was charged with giving effect to the testator's intent. Catholic Charities also noted that Mrs. Petry incorporated her husband's list of legatees, and Hope Haven was still operating as a home for foster and troubled youth at that time.

After noting that there would be no issue if Hope Haven was still operating an orphanage in Marrero, the judge advised the parties that he was inclined to find that the bequest was a universal legacy for the benefit of several different charities, and that if there were a lapse in legacy, then it would not fall into intestacy. The court was unwilling to rule on whether the Hope Haven legacy had lapsed without evidence regarding what "orphanage-type services" Catholic Charities currently

provided. The judge left the hearing open for Catholic Charities to provide additional evidence and allowed all parties to continue to participate in the litigation pending further orders and judgments.

Sr. Hebert, the President and CEO of Catholic Charities since 2013, and Gordon Wadge, her immediate predecessor, testified at separate hearings a week apart at the end of March 2023. She testified that the current programs Catholic Charities operates service and support vulnerable children, youth and their families, and/or populations affected by out-of-home placements.

Sr. Hebert further testified that the Archdiocese still owned the land, and the only Catholic Charities program that currently used the facilities was an adult daycare program that used a building on the Madonna Manor side, operated by PACE, a separate corporation owned by Catholic Charities. Sr. Hebert entered the Order in 1960 and, with the exception of a ten-year period, has worked exclusively in the Greater New Orleans Metro Area. She never visited Hope Haven institution while it operated as an orphanage and did not know Mrs. Petry.

Gordon Wadge worked at Catholic Charities from 1979 – 2013, and served as President and CEO for 10 years before leaving the organization. He testified that he had a lot of interaction with Hope Haven during the first 10 years of his career caring for abused, neglected and delinquent children in the State's custody. Mr. Wadge explained Catholic Charities closed Hope Haven Center because the preferred model for servicing the population moved away from institutionalized placements and group homes. To his recollection, the children who left Hope Haven were not placed in other facilities ran by Catholic Charities.

Mr. Wadge further testified, "Hope Haven was certainly a ministry of Catholic Charities, Hope Haven Center and Hope Haven campus services, yeah," and "Hope Haven" referred both to the orphanage "Hope Haven Center," as well as the facility "Hope Haven Campus". He stated that the campus is divided into

two sides – Hope Haven and Madonna Manor – by Barrataria Boulevard. Through his work on a local board, Mr. Wadge had knowledge of the 99-year lease the Archdiocese entered into with Jefferson Parish to use for the public's benefit on the west, or Hope Haven side. He explained that no services are being provided on the leased side of the campus. He testified that Hope Haven still exists today as there is activity on the campus, such as the operation of an adult day care center and building renovations.

After Mr. Wadge's testimony, the court confirmed that only Catholic Charities presented evidence at the hearing "regarding[ . . .] what still exists that Catholic Charities does that is similar to what they did at Hope Haven Center." Both the Legacy Defendants and Intestate Heirs objected to the court receiving any evidence. The court overruled their objections, gave the parties two weeks to submit any post-trial memoranda and recommended that they attempt to reach a resolution by way of consent.

On May 31, 2023, the district court entered judgment in favor of Catholic Charities and against the Legacy Defendants, Jefferson SPCA, Bridge House Corporation and Intestate Heirs. The court found that Mrs. Petry's testamentary bequest to "Hope Haven in Marrero, LA" had not lapsed and ordered disbursement to Catholic Charities. The district court found that the testimony of Sr. Hebert and Mr. Wadge was sufficient to establish that "Hope Haven Campus" was in existence at all relevant times. Therefore, the court concluded that the legacy to "Hope Haven in Marrero, La" did not lapse and ordered the funds to be distributed to Catholic Charities as the entity responsible for the management, care, and maintenance of the Campus.

The court's written reasons for judgment explained that 1) Mrs. Petry clearly intended for her entire estate to benefits the charities and non-profit organizations and rejected the Intestate Heirs' argument; 2) although most of the parties

interpreted the legacy as a legacy to "Hope Haven Center", the testimony of Mr. Wadge repeatedly distinguished the Center from "Hope Haven Campus", and interpreting the legacy as referring to Hope Haven Campus will effectuate the legacy; 3) if the court's accepted the Legacy Defendants' and Intestate Heirs' interpretation of the legacy as being strictly for the benefit of the children who received services at the Center, then the court would have to assume that Mrs. Petry knowingly drafted an impossibility into her will and find that the legacy has lapsed; 4) Hope Haven Campus existed in 2012 and is still operating today; Catholic Charities is still providing charitable services on the campus; and 5) the failure to leave the bequest to Catholic Charities for the benefit of "Hope Haven in Marrero, Louisiana" is no different from some of the other legacies whose financial administrators' names/identities were not shared with the charity itself (*i.e.* "Channel 12 WYES" and Magnolia School, Jefferson Parish, Louisiana).

The Intestate Heirs/Siren III filed a motion for new trial and argued that the trial court relied on inadmissible evidence in making its decision and the judgment was contrary to law and evidence. The other parties objected to the fact that Catholic Charities attached exhibits to its post-trial memorandum rather than presenting the evidence at trial. Catholic Charities filed a letter to voluntarily withdraw the exhibits attached to its post-trial memorandum. The trial court denied the motion for new trial. The reasons for judgment explained that although the withdrawn exhibits "succinctly demonstrate the relationship between Catholic Charities and Hope Haven, those exhibits were not the foundation of the court's judgment." The court drew its conclusions regarding the Center, Campus, and Catholic Charities from Mr. Wadge and Sr. Hebert's testimony, and stated that a new trial "would only result in the submission of identical evidence." This timely appeal followed.

## ASSIGNMENTS OF ERROR

Appellants assign the following as error.

1. The district court erred in relying on extrinsic evidence to determine Ms. Petry's intent in drafting her bequest to Hope Haven where the plain language of her Will is clear and unambiguous.

2. The district court erred in concluding that Ms. Petry's testamentary bequest to "Hope Haven in Marrero, Louisiana" has not lapsed, where Hope Haven had ceased to exist before Ms. Petry died.

3. The district court erred in ordering that Ms. Petry's testamentary bequest to "Hope Haven in Marrero, Louisiana" be distributed to Catholic Charities, where the legacy has lapsed according to the law, where there is no evidence that Catholic Charities is entitled to the bequest, and where the lapsed legacy devolves to all ten of the remaining charities listed in Ms. Petry's will.

4. The district court erred in denying the Estate of Edward D. Siren, III's Motion for New Trial, by relying on non-record evidence.

## LAW AND ANALYSIS

A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *Snider v. Louisiana Med. Mut. Ins. Co.,* 13-579 (La. 12/10/13), 130 So.3d 922, 929, *citing Evans v. Lungrin,* 97-541 (La. 2/6/98), 708 So.2d 731, 735. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Id.* When a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo. Id.* We find that the district court committed legal error when it chose to hear the matter as a summary proceeding.

There are three different modes of procedure used in civil matters in Louisiana trial courts: ordinary, summary, and executory. La. C.C.P. art. 851. Ordinary proceedings are used "in the district courts in all cases, except as otherwise provided by law." *Id.* "Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings."

La.C.C.P. art. 2591.

*Succession of Gendron*, 17-216 (La. App. 5 Cir. 12/27/17), 236 So.3d 802, 809.

The executor of Mrs. Petry's estate requested a declaratory judgment that determined whether the legacy to "Hope Haven in Marrero, LA" had lapsed. "A claim for declaratory relief is not a summary proceeding; it requires a trial on the merits where each party has an opportunity to present evidence in a form other than verified pleadings and affidavits." *MAPP Const., LLC v. Amerisure Mut. Ins. Co.*, 13-1074 (La. App. 1 Cir. 3/24/14), 143 So.3d 520, 530-31. The district court heard the matter as a summary proceeding over the objection of the Intestate Heirs' counsel. The district court recognized that the law requires that a testamentary disposition be understood in the sense in which it can have effect, rather than one in which it has none. La. C.C. art. 1612; *see also Succession of Russell*, 590 So.2d 606, 612 (La. App. 3d Cir. 1991), *writ denied,* 591 So.2d 700 (La. 1992), *citing Succession of Lambert,* 210 La. 636, 28 So.2d 1, 8 (1946). However,

> [w]here there is ambiguity in the description of the legatee, or the thing which the testatrix intended to bequeath, or the quantum or portion of the legatee, or where there is doubt as to the sense in which the words are used by the testatrix, resort may be had to extrinsic evidence. In fact, all circumstances throwing any light on the testatrix's intention must be considered.

*Succession of Cardone*, 271 So.2d 338, 340 (La. App. 2d Cir. 1972), *writ denied,* 273 So.2d 300 (La. 1973), *citing Succession of Smart*, 214 La. 63, 36 So.2d 639; La. C.C. arts. 1611 and 1715. Upon *de novo* review of the record, we find that the district court erred in rendering judgment after a summary proceeding rather than in an ordinary proceeding in which all parties are permitted to introduce evidence. We therefore remand the matter so all parties have an opportunity to present evidence to support their understanding of Mrs. Petry's intent in making her bequest. Accordingly, we pretermit discussion of Appellants' assignments of error.

### *DECREE*

Considering the foregoing, the May 31, 2023 judgment of the district court finding that Mrs. Petry's testamentary bequest to "Hope Haven in Marrero, La." had not lapsed and ordering disbursement of the legacy to Catholic Charities is vacated. The matter is remanded for further ordinary proceedings consistent with this opinion.

**VACATED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**APRIL 24, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-CA-474

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
ALEXANDRE E. BONIN (APPELLANT)        JEAN-MARC BONIN (APPELLANT)        R. CHRISTIAN BONIN (APPELLANT)
IAN P. GUNN (APPELLEE)                PETER J. ROTOLO, III (APPELLANT)   TYLER J. ARBOUR (APPELLANT)

**MAILED**
A. ELYCE IEYOUB (APPELLANT)          DYLAN K. KNOLL (APPELLEE)          ROBERT E. TARCZA (APPELLEE)
ATTORNEY AT LAW                      RICHARD A. BORDELON (APPELLEE)     ATTORNEY AT LAW
1100 POYDRAS STREET                  TODD R. GENNARDO (APPELLEE)        330 CARONDELET STREET
SUITE 2300                           ATTORNEYS AT LAW                   SUITE 300
NEW ORLEANS, LA 70163                201 ST. CHARLES AVENUE             NEW ORLEANS, LA 70130
                                     SUITE 3920
PAUL A. BONIN (APPELLANT)            NEW ORLEANS, LA 70170
ATTORNEY AT LAW
4224 CANAL STREET
NEW ORLEANS, LA 70119                ANNE E. RAYMOND (APPELLANT)
                                     ATTORNEY AT LAW
                                     601 POYDRAS STREET
                                     SUITE 2775
                                     NEW ORLEANS, LA 70130